**Michael Lee SAMMONS,
Plaintiff–Appellant,**

v.

**Maury TAYLOR, Six Unidentified FBI Agents or Department of Justice Employees United States of America, Defendants–Appellees.**

No. 90–8763.

United States Court of Appeals,
Eleventh Circuit.

Aug. 10, 1992.

Michael Lee Sammons, Jesup, Ga., Lee Ann Jones, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for plaintiff-appellant.

Patricia Rebecca Stout, Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Before KRAVITCH and BIRCH, Circuit Judges, and KAUFMAN *, Senior District Judge.

FRANK A. KAUFMAN, Senior District Judge:

Michael Lee Sammons brought this *pro se* civil rights action, seeking damages

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

seemingly pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and its progeny, in the United States District Court for the Northern District of Georgia, Rome Division, against FBI agent Maury Taylor and six other unidentified FBI agents, in their individual capacities only, alleging that one or more of those defendants conducted an unconstitutional, pretextual inventory search of his automobile. In connection therewith, Sammons contends that $9,020 in United States currency, belonging to him and confiscated during the automobile search, has been unlawfully taken from him. Defendants filed a motion to dismiss or, alternatively, for summary judgment. Before Judge Murphy, sitting in the court below, acted with respect to that motion, Sammons sought to amend his complaint to name additional FBI agents as defendants, apparently in their individual capacities only. Without deciding whether plaintiff would or would not be permitted so to amend, the district court stayed its ruling in that regard, granted the summary judgment motions of defendants and considered the issue of the amendment by plaintiff of his complaint to be moot. In so doing, Judge Murphy concluded that Sammons' challenges to the automobile search, the subsequent seizure of Sammons' property and the forfeiture are all barred by the qualified immunity doctrine. For the reasons set forth in this opinion, we remand this case to the court below, and direct that court (a) to permit Sammons to file his amended complaint, (b) to conduct further proceedings with respect to the inventory search issue and (c) to transfer all of the forfeiture claims of plaintiff, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of Tennessee at Knoxville.

## I.

Sammons and his wife were traveling south in Georgia on Interstate 59, approximately eight miles from Trenton, Georgia, on June 20, 1988, when their automobile was stopped by FBI Special Agent Taylor and other FBI agents. Sammons alleges that he was arrested by those FBI agents pursuant to a bench warrant issued by the United States District Court for the Eastern District of Tennessee at Chattanooga as a result of an August 11, 1987 indictment on narcotics charges filed in that court. Sammons asserts that at the time of his arrest in Georgia, he and his wife requested that Mrs. Sammons be permitted to drive the automobile home, or that the automobile be left where it was—on the shoulder of an access road—until Mrs. Sammons could arrange to have her father take the automobile, but that Agent Taylor disregarded those requests, stating "there's no way you're getting this car"; and that thereafter Agent Taylor apparently took Mrs. Sammons into custody and the FBI impounded the automobile.

In an affidavit filed in the court below, Agent Taylor stated: (1) Mrs. Sammons "was never arrested or otherwise detained" and, at her request, she was driven by FBI agents to her father's residence; (2) the automobile could not be released to Mrs. Sammons because she was too upset to drive and because the Sheriff's Officers on the scene determined that she did not have a valid driver's license, and (3) "[f]or those reasons alone, the car was impounded, and subsequently searched in accordance with standard FBI inventory procedures."

In his original, *pro se* reply brief filed in this Court, Sammons appended portions of a transcript of Agent Taylor's testimony at Sammons' sentencing hearing in the Eastern District of Tennessee at Chattanooga in connection with the criminal case arising out of the aforementioned indictment. During that hearing, Taylor testified that Mrs. Sammons was taken back to the FBI office in Chattanooga, Tennessee, to be asked some questions and that he did not allow Mrs. Sammons to drive the automobile away because "we thought she may have been aiding and abetting" her husband. The Government, in its supplemen-

tal responsive brief filed in this Court, acknowledges that Mrs. Sammons was transported to the FBI office in Chattanooga for questioning and then released that same evening. At oral argument in this Court, however, government counsel for the first time argued that the portions of the transcript of the sentencing in the Eastern District of Tennessee at Chattanooga are not properly before this Court in this appeal because they had not been presented to the Georgia district court before the latter granted the summary judgment from which this appeal was taken.

While, in his affidavit submitted to the court below, Agent Taylor did not address Sammons' request that Mrs. Sammons' father be permitted to take custody of the automobile or his reasons for not honoring that request, government counsel has asserted, in a brief filed with this Court, that no such request was ever made. Agent Taylor has also stated in his affidavit submitted in the court below that the search was conducted "by another FBI special agent and several Dade County (Georgia) Sheriff's Officers." According to Agent Taylor's affidavit, that search revealed $9,020 "secreted in a 12 can Coca–Cola container...." However, in another affidavit filed by the government in the court below, FBI Special Agent Sam Allen has stated that only $4,020 of the currency was found in the Coca–Cola container and that the remaining $5,000 was found underneath some clothes in a clothes bag. In addition, although Agent Taylor asserts in his affidavit filed in the Court below that the search was carried out in accordance with standard FBI inventory practices, government counsel in the proceedings in the court below and in a supplemental responsive brief submitted to this Court concerning the issue of liability, makes much of the fact that Agent Taylor was not involved with the search in any way.

On August 18, 1988, while Sammons was incarcerated in the Hamilton County Jail, in Chattanooga, Tennessee, the FBI field office in Knoxville sent to him a notice of forfeiture of the $9,020 in currency which was seized as a result of the inventory search at issue in this case.[1] The notice informed Sammons that he could contest the forfeiture of the property and/or "petition to the FBI and request a pardon of the forfeited property." The notice stated that Sammons could file a claim and cost bond by September 26, 1988 if he wished to contest the forfeiture. The notice also set forth an address to which Sammons could send all documents. The notice was signed by Paul V. King, Jr. Sammons received the forfeiture notice on August 22, 1988, and on September 6, 1988, sent a letter to Mr. King, at the address provided in the forfeiture notice, asking for the appropriate forms with which to contest the forfeiture and with which to request a waiver of the bond. Sammons also asked to be provided with copies of the relevant statutes which had been referenced in the forfeiture notice. Sammons' letter was returned to him on September 17, 1988, marked "returned to sender, attempted, not known." On September 18, 1988, Sammons remailed the letter, this time addressed to the FBI, at the same address, and marked to the attention of Paul King, Jr. According to Mr. Allen's affidavit, the FBI received Sammons' September 18 letter and because there was

> no mention in this correspondence of any intent by Sammons to contest the forfeiture[,] I advised the Forfeiture Analyst to disregard the letter on the basis that (1) the FBI was under no obligation to provide a potential claimant with copies of legal publications; (2) there is no "form" for a claim of ownership, and the Notice of Forfeiture letter clearly stated

**1.** According to Mr. Allen's affidavit, following seizure of the currency during the inventory search, FBI Special Agents arranged for a drug test of the $9,020 by a drug detection dog owned by the Chattanooga Police Department. The dog alerted on the currency in four tests, "thereby convincing the FBI that the money was permeated with the residual odor of one or more of the following controlled substances which [the dog] had been trained to detect: marijuana, hashish, cocaine, heroin, and quaaludes. Following this test, the FBI decided to seize the $9,020 for forfeiture pursuant to Title 21, United States Code, § 881."

the procedures to be followed; and (3) there is no "form" for a waiver of a bond.

Thus, the FBI received Sammons' letter on September 22, 1988—prior to the September 26, 1988 deadline for contesting the forfeiture—and decided to disregard it. The FBI did not advise Sammons why Mr. Allen believed that the FBI was not under an obligation to provide Sammons with the requested information; indeed, the FBI apparently did not respond to the letter at all.

Subsequently, on September 25, 1988, having heard nothing further from the FBI and fearing the September 18 letter may not have been received, Sammons sent what he termed an "insurance" letter to the same address, stating: "I will be litigating the seizure of the $9,020 since it did not derive from any illegal source." The FBI received that letter on September 30, 1988. In a responsive letter dated October 5, 1988, the FBI advised Sammons that his September 25 letter was not received by the FBI until after the prescribed date of September 26, 1988, and therefore the FBI considered the time period for contesting the forfeiture to have expired. In that letter, the FBI advised Sammons that he could request "the remission (pardon) of the forfeiture" and advised him to submit a Petition for Remission within 30 days of the date of the letter. Sammons was instructed to "[f]ollow the guidelines of Title 28, CFR, Sections 9.2–9.7 (1987)." Although it is not entirely clear from the record, Sammons apparently filed a letter with the FBI on December 15, 1988, which was treated as a Petition for Remission, and that Petition was denied by the FBI on March 15, 1989.

According to the government's motion to dismiss or, in the alternative, for summary judgment, filed in this case in the Rome Division of the court below before Judge Murphy, Sammons, prior to instituting the within case, filed a suit in the Atlanta Division of the same court stating some of the same forfeiture-related claims set forth by him in this case. In that earlier case,

Judge Hall observed that during Sammons' criminal trial in the federal district court for the Eastern District of Tennessee at Chattanooga, Sammons apparently filed a motion for the return of the $9,020, which motion had been denied. Judge Hall concluded that Sammons was attempting to appeal the decision of the Tennessee federal court through an improper route and that the proper route was by way of appeal to the United States Court of Appeals for the Sixth Circuit. Judge Hall also noted that the forfeiture proceeding itself took place in the Eastern District of Tennessee. Finally, in dismissing Sammons' suit without prejudice, Judge Hall observed that Sammons was not foreclosed from all remedies because he could file an action pursuant to the Federal Tort Claims Act.

Sammons, in response to the government's alternative dismissal and summary judgment motions filed in the court below, argued to Judge Murphy that Judge Hall had misapprehended the facts of the proceeding in the Eastern District of Tennessee with respect to the motion for return of the $9,020. According to Sammons, he only argued in his criminal case in Tennessee that the continued sequestration of his funds as evidence for trial, irrespective of the legality or illegality of the search and seizure, violated his Sixth Amendment right to employ counsel of choice. According to Sammons, the "criminal court simply held that for return of the $9,020 the plaintiff would have to present facts and argument proving that the 'search and seizure was in fact illegal.'" Sammons states that he made no such attempt.

At one or more times, Sammons has apparently also written letters to the Director of the FBI and to the Department of Justice, but apparently received no response to those communications. Sammons also filed a case in the United States Court of Claims seeking, *inter alia*, return of the $9,020. That case was transferred to the United States District Court for the Northern District of Georgia, Atlanta Division and was consolidated with the case decided by

Judge Hall, referred to above, prior to Judge Hall's final Order in that case denying relief to Sammons.

## II.

A district court's grant of summary judgment is reviewed *de novo* by an appellate court. *Morrison v. Washington County, Ala.,* 700 F.2d 678, 682 (11th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). When summary judgment is based upon conclusions of law, "those conclusions will be 'subject to the same standard of appellate review as any question of law raised upon appeal,' a plenary review of correctness by [the] court." *Crockett v. Uniroyal, Inc.,* 772 F.2d 1524, 1528–29 (11th Cir.1985) (quoting *Morrison,* 700 F.2d at 682). "When we examine a decision granting or denying summary judgment, we apply the same legal standards that control the district court's determination." *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985).

A motion for summary judgment should be granted only if there is "no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no "genuine issue for trial" where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Further, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513 (citing *Adickes v. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct.

1598, 1609, 26 L.Ed.2d 142 (1970)). "Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all evidence is viewed in the light most favorable to the non-moving party." *Morrison,* 700 F.2d at 682 (citing *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608). Although under certain circumstances a moving party may be able to meet its burden by pointing to "materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden ... it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Finally, the Supreme Court has directed that allegations contained in a *pro se* complaint are to be held "to less stringent standards than formal pleadings drafted by lawyers...." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam).

## III.

Sammons asserts that appellees violated his rights in conducting a pretextual search of his automobile. In response, defendants raised the defense of qualified immunity. In order to prevail upon their quest for summary judgment on the basis of qualified immunity, appellees must establish that they are entitled to qualified immunity as a matter of law and also must establish "that there are no genuine issues of material fact pertinent to those questions of law." *Rich v. Dollar,* 841 F.2d 1558, 1562 (11th Cir.1988). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Supreme Court stated that in order to meet

the "clearly established" criteria of *Harlow*, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

As this Court observed in *Rich*,

On motion for summary judgment the court is to determine 'not only currently applicable law, but whether that law was clearly established at the time an action occurred.' In addition, proper application of the *Harlow* test also requires a determination of whether the showings made by the parties create a genuine issue of material fact as to whether the defendant actually engaged in conduct that violated the clearly-established law. Both of these determinations go to questions of law that are subject to *de novo* review.

*Rich*, 841 F.2d at 1563 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738) (citations omitted). In *Ziegler v. Jackson*, this Court established a two-step analysis to be used in applying the *Harlow* test: the defendant government official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred," and then the burden shifts to the plaintiff to demonstrate that the defendant "violated clearly established constitutional law." *Ziegler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983).

In the instant case, it appears to be uncontested that the appellees were acting within the scope of their discretionary authority. Thus, there remains the question of whether the appellees' actions violated established constitutional or statutory law at the time the actions took place. This Court in *Rich* has provided guidance to determine "when issues of fact will or will not preclude summary judgment under *Mitchell* [*v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)]." *Rich v. Dollar*, 841 F.2d at 1564. In so doing, this Court pointed out:

[I]f the legal norms allegedly violated were as a matter of law clearly estab-

lished at the appropriate time, a genuine fact issue as to what conduct the defendant engaged in would preclude a grant of summary judgment based upon qualified immunity. In this latter situation the denial or grant of summary judgment turns on the second question of law identified in *Mitchell*, i.e., do the showings reveal a genuine issue of material fact as to whether the defendant's conduct violated the right accruing to the plaintiff under clearly established law.

*Rich*, 841 F.2d at 1565.

### IV.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. The United States Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) held that inventory searches of automobiles are consistent with the Fourth Amendment. In *Opperman*, in which the vehicle had been parked in a no parking zone, the Court stated that the "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369, 96 S.Ct. at 3097. The Court went on to observe that

[t]he inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings.... [Further,] there is no suggestion whatever that this standard procedure ... was a pretext concealing an investigatory police motive.

*Id.* at 375–76, 96 S.Ct. at 3100. *Opperman* might be read to extend only to impoundments of vehicles which present a hazard. However, in 1987, the Supreme Court de-

cided *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). In *Bertine*, the police arrested Bertine for drunk driving and, upon impounding his vehicle, inventoried its contents. The primary issue raised in *Bertine* related to the officers' search of closed containers within the vehicle and the admissibility of the contraband found in the containers. However, Bertine also raised, and the Court addressed, the question of whether the police violated the Fourth Amendment by impounding the vehicle rather than permitting Bertine to make alternative arrangements for its disposition. *See id.* at 373–74, 96 S.Ct. at 3099. In that regard the Court wrote:

> [W]hile giving Bertine an opportunity to make alternative arrangements would undoubtedly have been possible, we said in *Lafayette:* ... "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive means.'" We conclude that here, as in *Lafayette*, reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.

*Id.* (quoting *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)) (citation and footnote omitted).

Prior to the *Bertine* decision, Professor LaFave had argued that for an impoundment to be reasonable under the Fourth Amendment, the arrestee should be given the opportunity to avoid impoundment by directing that his vehicle be disposed of in some other lawful manner. *See* Wayne R. LaFave, *Search and Seizure* § 7.3(c), at 91 (2d ed. 1987). However, following the *Bertine* decision, Professor LaFave observed

> [T]he Supreme Court declined to adopt such a view [referring to his "alternative

disposition" argument] in *Colorado v. Bertine*, involving impoundment and inventory of a vehicle after the operator was arrested for driving under the influence. The state court reasoned that action was unreasonable because Bertine could have been offered the opportunity to make other arrangements for the safekeeping of his property. But the Supreme Court disagreed.

*Id.* at § 7.3, at 18 (Supp.1992).

In *Bertine*, the Court did stress the requirement that inventories "be conducted according to standardized criteria." *Id.* 479 U.S. at 374 n. 6, 107 S.Ct. at 742 n. 6.[2] Further, in response to Bertine's argument that regulations giving police discretion either to impound the vehicle or merely park and lock it in a public parking place were unconstitutional, Chief Justice Rehnquist, writing for the majority, specified:

> Nothing in *Opperman* or *Lafayette* prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Here, ... [t]here was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity.

479 U.S. at 376, 107 S.Ct. at 743.

Sammons argues that an impoundment and inventory search is constitutionally impermissible where no need to impound the vehicle existed in the first place. Sammons cites to several Circuit Court opinions handed down before *Bertine* and several District Court opinions filed after *Bertine* in support of that contention. *See United States v. Brown*, 787 F.2d 929, 931–32 (4th Cir.), *cert. denied*, 479 U.S. 837, 107 S.Ct. 137, 93 L.Ed.2d 80 (1986); *United States v. Pappas*, 735 F.2d 1232, 1234 (10th Cir. 1984); *United States v. Maher*, 724 F.Supp. 1348, 1356 (D.Wyo.1989), *rev'd on*

**2.** Indeed, Justice Blackmun, joined by Justices Powell and O'Connor, was so concerned with the need for standardized criteria that he "[wrote] separately to underscore the impor- tance of having such inventories conducted only pursuant to standardized police procedures." 479 U.S. at 376, 107 S.Ct. at 743 (Blackmun, J., concurring).

*other grounds,* 919 F.2d 1482 (10th Cir. 1990); *United States v. Ibarra,* 725 F.Supp. 1195 (D.Wyo.1989), *appeal dismissed,* 920 F.2d 702 (10th Cir.1990), *vacated,* —— U.S. ——, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991), *aff'd on remand,* 955 F.2d 1405 (10th Cir.1992).

*Bertine* does not support Sammons' argument that police—as a constitutional matter—must give a driver an opportunity to make his or her own disposition of the vehicle, provided it is not presenting a hazard. Of the four cases relied upon specifically by Sammons, only the *Maher* and *Ibarra* decisions of the district courts were rendered after the Supreme Court decided *Bertine.*

In one of those two cases, *Ibarra,* the district court concluded that in order to impound a vehicle, there must be a showing of "reasonable necessity." *Ibarra,* 725 F.Supp. at 1200, and in support of this position, the court observed:

> The common theme ... is that something more must be shown to justify impoundment of a car *than that it would otherwise be left unattended.* There must be a showing that some reasonable necessity prompted the impoundment. This is a salutary rule, for otherwise police would be authorized to freely stop a car for a minor traffic infraction, impound it and search it with impunity. Surely such a

circumstance is not consonant with the fourth amendment.

*Id.* at 1200 (quoting *State v. McDaniel,* 156 N.J.Super. 347, 383 A.2d 1174, 1179 (1978)) (emphasis added by district court).[3] It is to be noted that the district court in *Ibarra* made no mention of *Bertine.*[4]

In *Maher,* the district court relied upon the pre-*Bertine* case of *United States v. Pappas,* 735 F.2d 1232 (10th Cir.1984) and observed that an impoundment and inventory search would be improper "where there was no need to impound the car.... *'Opperman* cannot be used to justify the automatic inventory of every car upon the arrest of its owner.'" *Maher,* 724 F.Supp. at 1356 (quoting *Pappas,* 735 F.2d at 1234). Unlike *Ibarra, Maher* does make reference to *Bertine,* noting that the "Supreme Court emphasized that the police have some discretion in impounding vehicles. 'Nothing in *Opperman* or *Lafayette* prohibits the exercise of police discretion [to impound a vehicle] so long as that discretion is exercised according to standard criteria and *on the basis of something other than suspicion of evidence of criminal activity.'"* *Id.* at 1357 (quoting *Bertine,* 479 U.S. at 375, 107 S.Ct. at 743) (emphasis added by district court). After analyzing other pre-*Bertine* cases which stress the "reasonable necessity" for impoundment, the district court in *Maher* again referred to *Bertine,*

---

**3.** In *Ibarra,* the vehicle's driver was stopped on suspicion of drunk driving and although the officer apparently determined that the driver had not been drinking, in the course of questioning the driver, the officer determined that the driver had an expired driver's license and that there also was a problem with the vehicle's registration. On that basis, the officer had the vehicle towed to an impoundment lot and the driver and his passenger were transported to a location where they could wire for extra money and also attempt to find a licensed driver for the vehicle. The district court granted the defendant's motion to suppress the evidence found during the inventory search on the basis that the impoundment of the defendant's vehicle was not authorized.

Following the district court's decision in *Ibarra* to suppress the evidence obtained from the inventory search, the government requested reconsideration, which the district court denied.

Subsequently, the government appealed that suppression order to the Tenth Circuit which dismissed the appeal as being untimely filed. The Supreme Court granted certiorari and, in a per curiam opinion, concluded that the government's appeal was timely filed and therefore vacated the decision of the Tenth Circuit. Upon remand to the Tenth Circuit, that court upheld the district court, stating that the latter's factual findings with regard to lack of justification for impoundment were not clearly erroneous. *See Ibarra,* 955 F.2d 1405, 1409 (10th Cir.1992).

**4.** Nor did the Tenth Circuit, in *Ibarra,* specifically address *Bertine's* determination that police are not constitutionally required to permit a vehicle owner to make alternative arrangements for disposition of that vehicle. Rather, the court relied upon *Opperman's* public safety discussion and Wyoming law.

stating "[t]he trial court's inquiry is not whether a more reasonable path could have been traveled, but whether the actions were reasonable in light of the circumstances." *Id.* at 1357 (citing *Bertine,* 479 U.S. at 374, 107 S.Ct. at 742, and *Lafayette,* 462 U.S. at 647, 103 S.Ct. at 2610).

The circumstances in *Maher* involved a homemade flatbed trailer with an improper license plate. The vehicle was parked on the lot of a motel in which the owner of the trailer had rented a room. Testimony at the suppression hearing indicated that a police officer making a routine check found that the license plate on the trailer belonged to a Chevrolet Camaro which had been reported stolen in California. *Id.* at 1350. At the time the police took possession of the trailer in order to impound it, they "could only charge Maher with having an improperly registered trailer." *Id.* The officer, however, stated that he suspected the trailer may have been stolen and that it was police department policy to impound vehicles which had been stolen or had stolen license plates.

The issues before the court in *Maher* were, *inter alia,* whether the impoundment of the trailer was lawful and whether the taking of inventory was merely a pretext for an investigatory search. The district court decided that the impoundment was unlawful because the evidence was insufficient to amount to anything more than "unfounded suspicion," *id.* at 1356, and observed:

> Adhering to the letter of the [police department] policy, [the officer] would be justified in impounding any vehicle found in violation of state law. The logical extension of this justification is, of course, absurd. It would allow an officer to impound a vehicle for any minor violation whatever, and would certainly not be the type of discretion 'exercised according to standard criteria' discussed in *Bertine.* This standard is an open invitation for pretextual searches justified as inventories. The lawfulness of an inventory search depends first on

whether the impoundment was prompted by 'some reasonable necessity.'

*Id.* at 1357 (quoting *State v. McDaniel,* 156 N.J.Super. 347, 383 A.2d 1174, 1179 (1978)). The court in *Maher* concluded that the impoundment of the vehicle was "patently unreasonable" and further found the "impound of the trailer was merely a pretext for conducting a thorough investigatory search in the hope of discovering evidence of a crime." *Id.* at 1357–58.

In neither *Ibarra* nor *Maher* was the driver of the vehicle arrested. In contrast, here Sammons was arrested pursuant to a valid bench warrant. Indeed, Sammons does not challenge the validity of his arrest; rather, he challenges the motives of the arresting officers in impounding his vehicle when it was not impeding traffic or otherwise presenting a hazard to the public and when he specifically but unsuccessfully requested to be allowed to make arrangements for its disposition.

In *United States v. Roberson,* 897 F.2d 1092 (11th Cir.), *reh'g denied,* 907 F.2d 1145 (1990), this Court addressed a pretextual search claim by a defendant who had been arrested on an outstanding warrant following a traffic stop for a routine traffic violation. Upon being stopped by the police officer, the defendant drove to the parking lot of a bank and because there was no one present at that time to whom he could give custody of his vehicle, the police officer arranged to impound the vehicle. *Id.* at 1094. This Court found nothing in the record to support the claim of pretext, but stated that " 'whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case....' " *Id.* at 1096 (quoting *Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967)).

In *United States v. Rodriguez–Morales,* 929 F.2d 780 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992), the First Circuit addressed the contention that police impoundment of the defendant's vehicle was consti-

tutionally unreasonable because the defendant could as easily have been permitted to park his vehicle in a safe place, and wrote:

> [T]he existence of alternative means of dealing with the automobile, even less intrusive means, does not illegitimate the constables' decision to impound it. When a motor vehicle is left without a licensed driver in the course of a lawful highway stop, the Constitution only requires the police to act reasonably with regard to disposition of the vehicle. There is no requirement that the officers must select the least intrusive way of fulfilling their community caretaking responsibilities.
>
> Framed precisely, the critical question in cases such as this is not whether the police needed to impound the vehicle in some absolute sense, or could have effected an impoundment more solicitously, but whether the decision to impound and the method chosen for implementing that decision were, under all the circumstances, within the realm of reason.

*Id.* at 786 (citations omitted).

In *United States v. Davis,* 882 F.2d 1334 (8th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990), the court also addressed the argument that an impoundment and subsequent inventory search were invalid "because the police could have chosen alternatives to impounding the car [and therefore] the procedures taken were not 'standard.'" *Id.* at 1339 (footnote omitted). In addition, the defendant argued that the police were obliged to offer "less intrusive" alternatives to impoundment. The court observed that *Bertine* had "rejected" those arguments and noted that as long as "'reasonable police regulations relating to inventory procedures [are] administered in good faith' and 'according to standardized criteria,' the Fourth Amendment is satisfied." *Id.* (quoting *Bertine,* 479 U.S. at 374 & n. 6, 107 S.Ct. at 742 & n. 6.).

■ In the light of *Opperman* and *Bertine,* and of the lower federal court cases discussed *supra,* the "contours" of the right at issue in the present case appear to be as follows: Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of "something other than suspicion of evidence of criminal activity." If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria. Because an inventory search is an exception to the Fourth Amendment's warrant requirement, however, the government officer has the burden to show that the requirements of the inventory search exception have been met. *See Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

At the time the impoundment and search of Sammons' vehicle took place, *Opperman* had been decided for more than ten years. *Bertine,* which arguably set a standard less stringent than *Opperman,* was decided in January of 1987 and therefore had been in effect for almost a year and one half before Sammons' arrest. Accordingly, under *Harlow* and *Anderson,* the requirement that an inventory search be conducted on the basis of something other than suspicion of evidence of criminal activity was sufficiently clear that a reasonable official would understand the kind of activity which would violate that requirement.

■ Although the case law teaches that FBI agents, the defendants-appellees herein, were not constitutionally required to permit Sammons to make an alternative disposition of his vehicle, that same case law requires that the decision to impound Sammons' vehicle have been made in good faith, based upon standard criteria, and not solely based upon "suspicion of evidence of criminal activity."

Sammons asserts that he requested that he be permitted to make alternative disposi-

tion of his vehicle and that appellee Taylor responded: "There's no way you're getting this car." Sammons has also alleged that appellees failed to follow standard FBI procedures with respect to the decision to impound the car. In support of his argument, Sammons included Section 5–7.2, entitled "Impoundment Inventories," from the FBI procedures manual. That section provides:

> Agents usually do not become involved in everyday caretaking responsibilities regarding storage and custody of automobiles. These functions are properly assigned to state and local authorities. However, situations are conceivable in which Agents might have a legal duty to arrange for storage of a vehicle to protect it and its contents. A typical example might occur when a subject is arrested in his vehicle away from home; he cannot personally arrange its storage, the vehicle cannot be left at the arrest scene, local authorities are either unavailable or refuse to take possession of the vehicle, and no independent legal justification exists for seizing the car.

Sammons argues that because the FBI procedures manual acknowledges that FBI agents do not normally involve themselves with impoundment and inventory of vehicles when local law enforcement agents are available to handle that task, the participation of one or more of the defendants in the inventory search of the vehicle in this case is evidence of the FBI's intent to conduct an investigatory search under the guise of an inventory search.

The appellees' argument that the impoundment and the inventory search were conducted according to standard FBI procedures is based upon appellee Taylor's affidavit to that effect. However, it is to be noted that, at the same time, appellees insist that Taylor was not involved with the search in any way.

■ Sammons also asserts that appellees took his wife into custody, on a pretextual basis, in order to support their plan to impound and then to search the vehicle. Appellee Taylor, in his affidavit, has stated that Sammons' wife was "never arrested or otherwise detained." However, during appellee Taylor's testimony at Sammons' sentencing in the Eastern District of Tennessee, which took place before Taylor filed his affidavit with the Georgia district court below, Taylor stated that Sammons' wife was taken to the Chattanooga FBI office to be asked questions and that she was not permitted to drive the car because "we thought she may have been aiding and abetting [Sammons]." That testimony in the Eastern District of Tennessee was not presented to the court below. While, as a general rule, an appellate court will not consider arguments or evidence not presented to the district court, *see First Alabama Bank v. First State Ins. Co., Inc.,* 899 F.2d 1045, 1060 n. 8 (11th Cir.), *reh'g denied,* 909 F.2d 1493 (1990), nevertheless, "[t]his principle is not a jurisdictional limitation but merely a rule of practice, and '[t]he decision whether to consider an argument first made on appeal ... is "left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."'" *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360 (11th Cir.1984) (quoting *Roofing & Sheet Metal Serv. v. La Quinta Motor Inns,* 689 F.2d 982, 989 (11th Cir.1982)) (footnote omitted). In this instance simple fairness calls upon us to consider Taylor's sentencing hearing testimony in the current proceeding.

■ In the context of the record presently before this Court, there are factual differences between Sammons's response to appellees' motion and appellee Taylor's affidavit.[5] In addition, the differences between Taylor's statements during the sen-

---

**5.** Defendants in their reply brief assert that Sammons did not file an affidavit in support of the facts alleged in his response and therefore his response was insufficient to demonstrate that a genuine issue as to material facts existed; that is, "plaintiff has rested upon his mere allegations which are insufficient to defeat a properly supported motion for summary judgment."

tencing proceeding and in his affidavit reinforces the view that there exists a genuine factual dispute concerning the motive of appellees in impounding Sammons' vehicle. Further, on the basis of the inconsistency in appellees' argument concerning whether the inventory search was conducted according to standard procedures,[6] there is a further genuine issue of material fact. Finally, Sammons' contention that appellees impounded his vehicle as a pretext for a search presents a question of motive which can often, if presented in a more than conclusory way, make a disposition upon summary judgment inappropriate. As Judge Wisdom has stated:

> The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.

*Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir.1970).

In sum, we conclude that there were genuine issues of fact which precluded a grant of summary judgment with respect to whether appellees utilized the impoundment of the vehicle as a pretext for conducting a search in violation of the *Opperman/Bertine* inventory search standard. We therefore remand this case for further proceedings in the district court in accordance with this opinion.

## V.

Sammons raised in the Georgia district court below before Judge Murphy, and has stated in this appeal, claims based upon not only an alleged unconstitutional inventory search in Georgia on June 20, 1988, but also alleged wrongful forfeiture actions. While the record is not entirely clear in that latter regard, Sammons apparently seeks return of $9,020 and also, pursuant to *Bivens*, damages with regard to the forfeiture, against one or more of the defendants whom Sammons has named in his original complaint in the court below or has sought to name in his amended complaint. A review and analysis of the facts and the applicable law leads this Court to conclude that venue in connection with all of those forfeiture issues is not present in the court below in the Northern District of Georgia. In that regard we agree with both Judge Murphy and Judge Hall.

The Knoxville, Tennessee Field Division of the FBI conducted the administrative forfeiture of the property seized as a result of the June 20, 1988 inventory search, pursuant to Title 21, Section 881 and Title 19, Sections 1602–1619, of the United States Code as well as under Title 21, Sections 1316.71–1316.81 of the Code of Federal Regulations. Neither Section 881 nor Sections 1602–1619 include administrative forfeiture procedures to be followed by an agency. The procedures to be followed are contained in the agency regulations. Notice in FBI forfeitures is governed by Title 21, Section 1316.75 of the Code of Federal Regulations, which reads in part:

> (a) [T]he custodian ... shall cause a notice of the seizure and of the intention to forfeit and sell or otherwise dispose of the property to be published once a week for at least 3 successive weeks in a newspaper of general circulation in the judi-

---

Brief for Appellees, at 14. Contrary to appellees' assertion, however, this Court has recognized that facts alleged in an inmate's sworn pleading are sufficient and that a separate affidavit is not necessary. *See Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir.1986).

6. We also note that Agent Taylor's affidavit may not meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e) requires that an affidavit be "made on personal knowledge." Agent Taylor asserted that the

search of Sammons' vehicle was conducted in accordance with FBI agency regulations; however, he also asserted that the search was conducted by someone other than himself—and defendants contend that he had no personal involvement in the search. Thus, the record in this case does not incontrovertibly establish that Agent Taylor had personal knowledge that the search was, in fact, conducted in accordance with agency regulations.

cial district in which the proceeding for forfeiture is brought.

(b) The notice shall: (1) Describe the property seized ...; (2) state the time, cause, and place of seizure; and (3) state that any person desiring to claim the property may, within 20 days from the date of first publication of the notice, file with the custodian ... a claim to the property and a bond with satisfactory sureties in the sum of $5,000 or ten percent of the value of the claimed property whichever is lower, but not less than $250.

21 C.F.R. § 1316.75.

The forfeiture notice sent to Sammons by the FBI in its letter stated, in part:

If you want to contest the seizure or forfeiture of the property in court, you must file a claim of ownership and a bond in the amount of $902 with the FBI by SEPTEMBER 26, 1988. The bond may be in cash or a cashier's check payable to the U.S. Department of Justice or provide a surety.

If you are indigent (needy and poor), you may not have to post the bond. To request a waiver of the bond, you must fully disclose your finances in a signed statement called "Declaration in Support of Request to Proceed in Forma Pauperis." You can obtain this form from the FBI Field Office listed below. File the signed declaration and a claim of ownership of the property with the FBI by SEPTEMBER 26, 1988.

Sammons asserts that latter document did not give to him appropriate notice of the forfeiture. The Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), established the general standard for measuring the adequacy of notice: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportuni-

ty to present their objections." *Id.* at 314, 70 S.Ct. at 657.

Sammons contends that the above forfeiture notice was not sufficiently clear to afford him an opportunity to present his objections. In that regard, Sammons claims that at least two aspects of the notice are inadequate: the address for responding to the forfeiture notice, and the requirements specified for presenting an objection. Although the notice letter provided that a response should be directed to the Knoxville address, it also indicated it should be directed to the attention of the forfeiture analyst. The question therefore is posed as to whether addressing a return letter to the writer of the original letter at the address given—as Sammons did—was or was not unreasonable.

As to the clarity of instructions, Sammons asserts that the instructions in the letter were insufficient—by themselves—to afford him an opportunity to make known his objections to the proposed forfeiture. In *Willis v. United States,* 787 F.2d 1089 (7th Cir.1986), the Seventh Circuit considered the question of adequacy of notice in connection with a Drug Enforcement Agency forfeiture. In *Willis,* the claimant filed a petition for remission of forfeiture rather than a claim and cost bond. The DEA denied the petition. Willis brought suit to challenge the forfeiture, alleging *inter alia* lack of probable cause and inadequate notice. The Seventh Circuit observed that Willis' initial failure to file a claim and cost bond resulted in his waiving his right to challenge probable cause. It was in that context that the Seventh Circuit focused upon the adequacy of the forfeiture notice sent to Willis.

The Seventh Circuit in *Willis* pointed out that the notice contained legal jargon—the meaning of which was less than clear—but also observed that the claimant had in reality received two notices: in addition to the form letter, the DEA had sent a copy of its notice by publication. The court found that not only did the language of the two notices indicate the procedure for challenging

the probable cause aspect of the forfeiture in a judicial proceeding, but more important, the DEA had included copies of the relevant statutes and regulations which described the procedures involved. The Seventh Circuit, under those circumstances, determined that "[a]ll of the ... elements of the two notices, *taken together*, sufficiently informed Willis" that he was required to file a claim and a bond in order to obtain judicial review of the forfeiture. *Willis*, 787 F.2d at 1093 (emphasis original). The Seventh Circuit went on to state, however:

> There is no question that the language in the letter Willis received would not be adequate notice in itself, but in combination with copies of the applicable statutes, regulations, and public notice, we can reach no other conclusion but that Willis was adequately informed of what would happen if he pursued an exclusively administrative remedy.

*Id.*[7]

While it may well be that an agency should include copies of the regulations or statutes, or both, to which it refers in its notice, one question seemingly posed, in the context of Sammons' claims for damages pursuant to *Bivens* and defendants' assertion of qualified immunity with respect to those damage claims, is whether in June 1988 the requirement that copies of statutes and/or regulations accompanying a forfeiture notice in order to meet the requirements of due process was a "clearly established statutory or constitutional [right] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

There are also present in this appeal questions about the process followed by the FBI in handling Sammons' efforts to respond to the forfeiture notice. In a section entitled "Requirements as to claim and bond," the FBI forfeiture regulations state that if the documents provided by the claimant in order to obtain the judicial hearing "are not in satisfactory condition when first received, a reasonable time for correction may be allowed. If correction is not made within a reasonable time the documents may be treated as nugatory, and the case shall proceed as though they had not been tendered." 21 C.F.R. § 1316.76.

Thus, the regulation under which the FBI sent Sammons the notice of forfeiture gives a claimant a reasonable opportunity to file corrected documents if the original documents were deficient. The regulations, therefore, appear to contemplate that at least under certain conditions a claimant may be provided some notice of any inadequacy of the documents filed in connection with the claim. Here, appellees apparently did not advise Sammons that his filing was inadequate—if, in fact, it was inadequate—in order to give him an opportunity to submit a corrected filing. In that regard, the following observations of one commentator are noted:

> Although the purpose of the administrative forfeiture is merely to allow the government to avoid the necessity of filing suit and obtaining a default judgment in uncontested cases, the government has been using the procedure to deny would-be claimants access to courts.
>
> . . . .
>
> [L]aw enforcement agencies are declaring administrative forfeitures whenever the claimant fails to comply strictly with the short time limits for filing a claim and cost bond or when the agency be-

---

**7.** In *In re: Eighteen Thousand One Hundred and Twenty-Five Dollars, More or Less, in United States Currency*, (E.D.Va. July 18, 1986), an unpublished opinion rendered by the United States District Court for the Eastern District of Virginia, the court concluded that the notice provided to a claimant by the DEA failed adequately to inform the claimant of the need for prompt action. Citing *Willis*, the court stated that "[a]t a minimum, the government's failure to include the relevant statutes ... renders the Notice deficient." *Id.*, slip op. at 5. The court also observed that "[t]he government cannot assume that the claimant is going to immediately hire a lawyer to figure out what the Notice is saying." *Id.*

lieves that an in forma pauperis affidavit submitted in lieu of a cost bond is not meritorious....

1 David B. Smith, *Prosecution and Defense of Forfeiture Cases,* ¶ 6.01, at 6–4 & 6–5 (12/91).

In this case, the FBI, seemingly, received Sammons' letter requesting the appropriate forms to file the claim of ownership and waiver of bond as well as copies of the referenced statutes on September 22, 1988, well within the September 26, 1988 filing deadline.[8] However, Special Agent Sam H. Allen, the Principal Legal Advisor for the Knoxville, Tennessee Field Division of the FBI, advised the Forfeiture Analyst "to disregard the letter" based upon the fact that there were no forms for claim of ownership or waiver of bond and that the agency was not under any obligation to provide copies of legal publications. In that context, the question arises as to whether the FBI's actions in connection with the forfeiture did or did not meet the requirements for qualified immunity, and, if so, whether the district court correctly rendered summary judgment, in that regard, in favor of defendants.[9]

■ As indicated *supra* in this opinion, there is present in this appeal the issue of whether Sammons' litigation of the forfeiture itself was properly before the Georgia district court below. Judge Hall's earlier decision on that issue does not appear to bar relitigation because Judge Hall dismissed Sammons' complaint without prejudice. Likewise, according to the record before us and also Sammons' briefs filed in this appeal, it does not seem that the district court in the Eastern District of Tennessee, which conducted Sammons' criminal trial upon the narcotics charges, dealt specifically with the issue of forfeiture. Further, if Sammons did submit a request for remission which was addressed to, and in effect denied by, the FBI, that administrative determination, regardless of whether it was timely challenged in appropriate court proceedings, may not bar this Court or another court from re-examining the forfeiture. That is so because the FBI may have violated its own regulations. In that

---

8. The FBI did respond to Sammons' "insurance" letter dated September 25, 1988, but only to advise Sammons that it had been received on September 30, 1988, after the time period for contesting the forfeiture expired. The government concedes that the letter was postmarked September 26, 1988.

   In *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the Supreme Court ruled that a notice of appeal filed by an incarcerated *pro se* litigant was deemed filed at the time the inmate relinquished control of it to prison officials. In *Lewis v. Richmond City Police Department,* 947 F.2d 733 (4th Cir.1991), the Fourth Circuit determined that the Court's reasoning in *Houston* should not be limited to situations in which a *pro se* litigant was filing an appeal. The Fourth Circuit observed:

   > Fundamentally, the rule in *Houston* is a rule of equal treatment; it seeks to ensure that imprisoned litigants are not disadvantaged by delays which other litigants might readily overcome. It sets forth a bright line rule—that filing occurs when the petitioner delivers his pleading to prison authorities for forwarding to the court clerk.

   > The concerns which prompted the Supreme Court's ruling in *Houston* are equally present in the case at hand. The litigants are similarly situated. Both are incarcerated pro se litigants who are unable to monitor the process

   of the mails as are other litigants. They are unaware of delays and unable to rectify any problems even if they were apprised of them. They cannot deliver a copy of their document to the clerk by hand, and do not have access to express mail services.

   *Id.* at 735. Sammons was incarcerated and acting *pro se.* His letter was dated September 25, 1988, and if he had been able to use overnight mail or some other expeditious means of delivery, his letter would have been received in time. However, in this appeal we express no view as to whether the principles of *Houston* and/or of *Lewis* are applicable.

9. Sammons did not name the FBI agents involved in the forfeiture action in his initial complaint. As noted *supra,* while action upon his complaint as originally filed was pending in the district court, Sammons filed a motion to amend that complaint to name the additional defendants—including Special Agent Allen. When the district court granted defendants' motion to dismiss or for summary judgment, however, the court noted that it had stayed action on plaintiff's motion to amend and seemingly granted summary judgment only in favor of the originally named defendants and without disposing of the motion to amend.

regard, a commentator has written: "The court may exercise equitable or anomalous jurisdiction over agency forfeiture decisions in order to provide relief where a claimant's procedural error or the government's own misconduct has deprived him of his chance to contest the forfeiture." 1 David B. Smith, *supra* at 6–5. *See also In re Matter of Sixty Seven Thousand Four Hundred Seventy Dollars*, 901 F.2d 1540, 1544–45 (11th Cir.1990).

▮ The regulations under which the administrative forfeiture in question in this case took place provide that once the proper documents for contesting a forfeiture have been received by the agency, they are to be transmitted to the United States Attorney for the judicial district in which the proceeding for forfeiture is brought. 21 C.R.F. § 1316.76(a). In this case, the administrative forfeiture in and of itself was accomplished within the Eastern District of Tennessee at Knoxville. That would appear to exclude the existence of venue in the court below as to the forfeiture *per se*.

Sammons argues, however, that his claim for return of the forfeited currency is inextricably intertwined with both his pretextual search claim and his *Bivens*-type damage claims against the additional FBI agents who he seeks to name as additional defendants, and that all of those claims involve much of the same evidence. Sammons further appears to contend that, even if venue in the Georgia district court below is lacking as to Sammons' forfeiture claims concerning the *res* of the $9,020 and also as to his *Bivens*-type damage claims relating to the forfeiture as opposed to the impoundment and the inventory search, the appellees have waived any objection to such venue by failing to comply with Rule 12 of the Federal Rules of Civil Procedure. Pursuant to Rule 12(g), any party making a motion under Rule 12 must include in that motion all Rule 12 grounds then available to that party. Appellees moved pursuant

to Rule 12(b)(6) but did not explicitly raise an objection to venue under Rule 12(b)(3). Appellees did rely, however, in their motion to dismiss or for summary judgment, upon Judge Hall's opinion, discussed *supra*, in which Judge Hall determined that the proper forum for Sammons' pursuit of his forfeiture claim was in the Sixth Circuit.[10] Therefore, at least implicitly, appellees did challenge venue over the forfeiture claim itself in the district court below, and the district court did state in its order that because the forfeiture took place in Tennessee, it was inappropriate for Sammons to pursue that challenge in a Georgia district court. In that context, we conclude that appellees did not waive the right to challenge venue as to the forfeiture claim itself, and that the regulations under which Sammons' property was forfeited prescribe that the proper venue for judicially contesting the forfeiture itself lies in the district in which the forfeiture took place—namely the Eastern District of Tennessee at Knoxville. That is so not only because the forfeiture—and all acts by federal government agents with respect thereto—took place in that district, but so did all alleged violations of law by appellees with respect to that forfeiture, for which Sammons seeks *Bivens*-type *damages* against the appellees in this case. Further, as to those damage claims, and also as to the forfeiture itself, the defendants whom Sammons seeks to add in his amended complaint in order to state such claims were not even parties to this case in the court below. Accordingly, they should hardly in this litigation be deemed to have waived their respective rights to challenge venue.

Construing Sammons' claims attacking the forfeiture so as to include claims for the *res* of $9,020 and also damage claims against defendants as individuals, and in the light of the facts and the legal issues pertaining to those claims, we, in the exercise of our discretion, and in the interests of justice, remand all of the forfeiture

---

**10.** As we have already pointed out, it is not clear from this record that Sammons, in fact, raised an objection to the forfeiture, *per se*, in his

criminal trial, so that appeal to the Sixth Circuit would have been proper.

claims themselves and all of Sammons' damage claims relating to the forfeiture to the court below for transfer by it, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of Tennessee at Knoxville. To the extent that the determinations of any or all of those transferred claims may rest upon the validity of the impoundment and/or the search and the seizure, the transferee court will seemingly possess authority, if it desires to exercise the same, to time its rulings so as to await resolution in the court below of those impoundment and search and seizure issues.

## VI.

The within case is hereby remanded to the court below for further proceedings in that court pursuant to Part IV of this opinion and for transfer to the United States District Court for the Eastern District of Tennessee at Knoxville pursuant to Part V of this opinion.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.