United States Court of Appeals,

Eleventh Circuit.

No. 94-8355.

SHIPSTON ASSOCIATES, Plaintiff, Counter-Defendant, Appellee, Cross-Appellant,

Roderick Cushman, Cushman Family Trust C, by Milton Hecht, Plaintiffs-Appellees, Cross-Appellants,

v.

ESSELTE PENDAFLEX CORPORATION, Defendant, Cross-Claimant, Cross-Defendant, Appellant, Cross-Appellee,

NationsBank of Georgia, N.A., f/k/a Citizens & Southern National Bank, Defendant, Cross-Defendant, Counter-Claimant, Cross-Claimant, Third Party Plaintiff, Appellant, Cross-Appellee,

John J. O'Connor, Third Party Defendant, Appellant.

Feb. 12, 1996.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:92-cv-718-JTC), Jack T. Camp, District Judge.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

This appeal involves a sale-leaseback transaction gone awry. The parties appeal from the final judgment of the District Court for the Northern District of Georgia, granting in part and denying in part the parties' motions for summary judgment. For the reasons set forth below, we affirm the district court in part and reverse in part.

I.

A.

The essential facts are not in dispute. In 1967, Dymo Industries, the predecessor of appellant Esselte Pendaflex Corp.

(collectively "Esselte"), entered into a deal with Dursley Properties ("Dursley") for the sale and leaseback of a factory site in Augusta, Georgia. Esselte sold the site to Dursley and promptly leased it back, executing a twenty-five-year lease. Dursley borrowed the purchase money from institutional investors; the loan was structured so that it would be paid off by Esselte's lease payments and a balloon payment due from Dursley at the end of the lease term. The investors contracted with Citizens and Southern National Bank, now NationsBank (the "Bank"), to collect the payments due on the loan to Dursley; for performing this service, the Bank would receive a fee of $300 per year. Dursley secured these payments by giving the Bank a security deed (which, under Georgia law gave the bank legal, but not equitable, title to the property). *See Trust Co. v. Mobley,* 40 Ga.App. 468, 150 S.E. 169, 173 (1929).

At the conclusion of the foregoing transactions, Dursley sold its equitable interest in the property to appellee Shipston Associates ("Shipston"), a limited partnership. Shipston expressly assumed Dursley's obligations under the lease, but not Dursley's obligation to satisfy the loan from the investors.[1]

B.

This diversity action arises out of the Bank's sale of the property to Esselte in October 1991. The 1967 agreements specifically gave the Bank the power to sell the property to the

_____

[1]Under the security deed to the Bank, the Bank was appointed agent and attorney-in-fact for Shipston. As such, the Bank had the authority to accept Esselte's rent payments and to entertain, as Shipston's agent, any offer Esselte made to purchase the property.

lessee under certain conditions.  The parties disagree over whether those conditions were present.

The lease provided that Esselte could offer to purchase the property during the first quarter of 1992:[2]

> 22.3 *Lessee's Offer to Purchase.*  Lessee shall, after January 1, 1992, but on or before March 1, 1992, make a written offer to lessor [the Bank] to purchase the Premises and the Equipment on January 30, 1992 for cash in the amount of $107,839.45 [the balloon payment due the institutional investors].

Upon receipt of an offer, the Bank was required to communicate the offer to Shipston, who could either accept the offer, or reject it and tender the balloon payment to the investors.  Whether or not Esselte made an offer to purchase during the first quarter of 1992, Esselte had the right to renew its lease prior to January 1, 1992, for a five-year term at a below-market rate.[3]

Ignoring section 22.3 of the lease, Esselte communicated an offer to buy the property to the Bank on July 19, 1991.  The Bank was reluctant to entertain the offer until Esselte's attorney, John O'Connor, provided an "opinion of counsel" to the Bank.  The opinion stated that Esselte's offer "conform[ed] to the requirements of the [Bank's Security] Deed and the lease" between Esselte and Dursley, and that the Bank could properly entertain the

---

[2]Under the lease, Esselte could also make an offer to purchase the property at other times, but those provisions are not at issue in this case.

[3]The lease also provided that Esselte could renew the lease for up to five additional five-year terms, provided that Esselte gave Shipston notice on or before January 1 of the renewal period.  The rent for the original 25-year term of the lease was $84,044.63 per year.  The rent for the first five-year renewal term would have been $26,512.50 per year, and for subsequent renewal terms $15,907.50 per year.

offer. Without obtaining Shipston's acceptance of the offer, the Bank agreed to the sale; on October 1, 1991, it transferred the property by warranty deed to Esselte for $162,938.38, which the Bank paid to the institutional investors as the final payment due on the loan to Dursley. At that time, the property was worth over $1.9 million, according to Esselte's appraiser.

Then came the inevitable. Roderick Cushman, a partner in Shipston, contacted the Bank in January of 1992 to inquire about the status of the property. The Bank informed him that the property had been sold. Cushman contacted Esselte and demanded that the property be conveyed back to Shipston. Esselte refused, and Shipston instituted this action against Esselte and the Bank.

II.

Shipston's complaint contained seven claims for relief; only two are pertinent to this appeal.[4] The first claim asked that the district court set aside the conveyance from the Bank to Esselte and order Esselte to surrender possession of the property and pay back rent and incidental damages. The second claim sought monetary relief against the Bank and Esselte for the expenses Shipston incurred in regaining the property from Esselte.

In response, Esselte and the Bank denied liability and contended that the Bank's conveyance to Esselte was authorized by the security deed and the lease and was therefore valid.

Esselte cross-claimed against the Bank, contending that, if the district court set aside the conveyance of the subject

---

[4]These claims were actually set forth in Shipston's amended complaint, which we refer to herein as the "complaint."

property, the Bank would be liable for breaching the warranties contained in the warranty deed that the Bank had given Esselte and for the purchase price Esselte had paid for the property.

The Bank counterclaimed against Shipston and cross-claimed against Esselte, seeking a declaratory judgment upholding the conveyance to Esselte.[5] Alternatively, assuming that the court set aside the conveyance, the Bank sought indemnification from Esselte for any damages that might be assessed against it in favor of Shipston.

The parties' reciprocal discovery established the facts in Part I.A., *supra.* Because those facts were not in dispute in any material respect, the parties filed cross motions for summary judgment on all issues.

The district court, in a dispositive order, granted Shipston's motion and set aside the Bank's conveyance to Esselte, provided that Shipston pay Esselte $62,138.69.[6] The court denied, however, Shipston's claim against Esselte and the Bank for the expenses it incurred in obtaining this relief.[7]

---

[5]This declaratory relief was essentially the same relief the Bank sought in its answer to Shipston's complaint. In addition to filing a counterclaim and cross-claim, the Bank instituted a third-party proceeding against Esselte's attorney, John O'Connor. The Bank's claims against O'Connor are not before us.

[6]The sum of $62,138.69 is the amount of the balloon payment ($107,839.45) due the institutional investors minus Shipston's damages as stipulated by the parties. Part of the damages as stipulated was $42,204.61 in accrued rent from July 1, 1992 (the date the original 25-year lease expired), to December 31, 1993 (an arbitrary date selected by the parties to calculate the stipulated damages). Thus, one issue here is Esselte's liability to Shipston for rent accruing after December 31, 1993.

[7]The court denied Shipston's claim against the Bank on the ground that the provisions of the security deed protected the

Esselte moved the court to reconsider its rulings and to uphold the conveyance.  The court denied Esselte's motion, but, apparently believing that Esselte was entitled to equitable relief under the circumstances, amended its dispositive order to give Esselte a five-year renewal of its lease, effective July 1, 1992, at the rent stipulated in the lease.

Following the entry of final judgment, Esselte appealed all of the district court's rulings against it;  Shipston cross-appealed the district court's rulings granting Esselte a renewed lease and denying its claims for damages against both Esselte and the Bank.

## III.

We review the district court's grant of summary judgment *de novo,* applying the same legal standards that bound the district court.  *Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1377 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995).  In making this determination, we view all evidence in the light most favorable to the non-moving party. *Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir.1992).  Summary judgment is appropriate in cases in which there is no genuine issue of material fact.  Fed.R.Civ.P. 56(c).

## A.

The district court found that the conveyance from the Bank to Esselte was invalid, and set it aside.  In so doing, the court found that the Bank exceeded its authority under the security deed,

---

Bank from liability for conveying the property without Shipston's permission.  The court rejected Esselte's claim against the Bank for breach of warranty on the same theory:  the security deed rendered the warranty deed unenforceable against the Bank.

and that Esselte had constructive, if not actual, knowledge that the Bank had no authority to convey the property. Because Esselte knew that the conveyance was unauthorized, the court reasoned, it should not get the benefit of the conveyance.

Setting aside the conveyance has two consequences. First, because the court set aside the warranty deed, Esselte has no claim to damages for breach of the warranties in the deed. Esselte knew the warranties were invalid, and though under Georgia law the buyer's knowledge does not necessarily serve to nullify the warranties in a warranty deed, *see Currin v. Milhollin,* 53 Ga.App. 270, 185 S.E. 380, 381 (1936), we treat the deed as inoperative. For our purposes, then, the deed never existed, and there are no warranties to breach. We therefore affirm the district court's granting of summary judgment on Esselte's breach of warranty claims against the Bank.

The second effect of setting aside the conveyance is that, since Shipston has owned equitable title to the property since 1967, Shipston is now entitled to the rent accruing on the property from the expiration of the original lease term on June 30, 1992, to the present. After the parties stipulated to damages, the district court ordered Shipston to pay Esselte $62,138.69, and further ordered Esselte to deliver to Shipston a limited warranty deed upon receipt of that payment. We agree that Esselte must tender to Shipston the fair rental value of the property from December 31, 1993, to the present. The $62,138.69, however, should be held as a credit against any amount owed Shipston by Esselte. In the unlikely event that the fair rental value of the property for the

last two years is less than $62,138.69, Shipston must give Esselte a refund of the difference. Shipston may then record its title to the property. We affirm in part this aspect of the district court's judgment and reverse it in part.

## B.

The district court also reconstructed the transaction as if Esselte had exercised its option to renew the lease for the first five-year term. The court recognized that ordinarily Esselte would have lost this option by not exercising it. But because Esselte could not have exercised the option after purchasing the property, the court gave Esselte a five-year lease on Shipston's property.

We disagree with the district court's disposition. Esselte should not receive the benefit of a renewed, below-market lease. Esselte was not able to exercise the lease option because Esselte wrongfully induced the Bank to sell the property by having its attorney misrepresent the Bank's contractual authority. Esselte cannot now claim injury when it caused the injury in the first instance. The district court's amended order is therefore reversed insofar as it grants Esselte the renewed lease.

## C.

The district court found that the Bank was not liable to any party for damages, costs, or attorneys' fees because section 8.01(d) of the security deed shielded the Bank from all liability for any actions taken in reliance on an opinion of counsel. The district court construed the provision broadly, finding that the Bank was entitled to rely on the opinion of Mr. O'Connor, Esselte's counsel, in deciding whether or not to convey the property to

Esselte in July 1991, and thus that section 8.01(d) precluded the Bank's liability to any party.

We disagree with the district court's conclusion. The Bank knew that the agreements gave it limited power to sell the property, and knew, or should have known, that the sale to Esselte in October of 1991 was in violation of the Bank's agreement with Shipston. No reasonable bank would have relied on an opinion of counsel that said otherwise.

Further, the Bank owed a fiduciary duty to Shipston, acting as agent and attorney-in-fact for the partnership. Georgia law permits recovery of attorneys' fees against a fiduciary for causing the beneficiary unnecessary trouble and expense. *See Citizens & Southern Nat'l Bank v. Haskins,* 254 Ga. 131, 327 S.E.2d 192, 200 (1985). The Bank's carelessness in selling the property to Esselte certainly caused Shipston much unnecessary trouble and expense. We therefore reverse the order insofar as it denies Shipston recovery from the Bank for attorneys' fees and expenses.

IV.

In summary: (1) we affirm the granting of summary judgment as to Esselte's breach of warranty claims; (2) Esselte must pay Shipston the difference between the fair rental value of the property from January 1, 1994, to the date of the entry of this order and $62,138.69, the amount the district court ordered Shipston to pay Esselte; (3) we reverse the district court's granting of a renewed lease to Esselte, and hold that Shipston owns the property free of any leases or other encumbrances; and (4) we reverse the district court's order and hold that Shipston may

recover its litigation expenses from the Bank.  We find no error in the remainder of the district court's order, and so affirm those parts not mentioned above without further discussion.

It is so ORDERED.