Jerry McFARLAND, Jr., et al., Plaintiffs,

v.

Jim FOLSOM, et al., Defendants.

No. 93–D–1098–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 18, 1994.

---

Jerry McFarland, Jr., pro se.

Robert M. Weinberg, James H. Evans, Office of Atty. Gen., James Anthony McLain, Montgomery, AL, Harold L. Ferguson, Jr., Dominick, Fletcher, Yeilding, Wood & Lloyd, P.A., Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

De Ment, District Judge.

This matter is now before the court on Motions to Dismiss filed by Alabama Governor Jim Folsom; the Alabama State Legislature; the Alabama Supreme Court; Attorney General Jimmy Evans; Speaker of the House of Representatives of the Alabama Legislature Jimmy Clark; Clerk of the Alabama House of Representatives Gregg Pappas; President Pro–Tem of the Alabama Senate Ryan deGraffenried Jr.; Secretary of the Senate McDowell Lee; and Secretary of State Jim Bennett; Chief Justice of the Supreme Court of Alabama Sonny Hornsby; Associate Justices Hugh Maddox; Reneau P. Almon; Janie L. Shores; J. Gorman Houston; Henry B. Steagall II; Mark Kennedy; Kenneth F. Ingram; Oscar W. Adams Jr.; and Ralph Cook, filed August 23, 1993. Also, before the court is the Motion to Dismiss filed by the Alabama State Bar, and its past and present presidents Clarence Small Jr. and James R. Seale; the Executive Director of the Alabama State Bar, Reginald T. Ham-

ner; the past and present Admissions Secretaries of the Alabama State Bar; Norma Jean Robbins and Dorothy Johnson; and the president of the Alabama State Board of Bar Examiners, Michael Waters, filed August 26, 1993. The plaintiff responded to the motions to dismiss by filing an Answer to Motions to Dismiss and Supporting Authority, filed September 7, 1993. For the reasons set forth below, the defendants' motions to dismiss are due to be granted.

## FACTS

Jerry McFarland Jr. is a graduate of the Birmingham School of Law and seeks admission to practice law in Alabama. On August 4, 1993, McFarland filed a complaint in the United States District Court for the Northern District of Alabama, seeking declaratory and injunctive relief and damages on behalf of himself and a proposed class "composed of Blacks, Whites both male and female who are law school graduates and have sat for or been denied the opportunity to sit for or have as a result of a continuing discriminatory practice ... been denied admission to the Alabama State Bar and the right to Practice Law in the State of Alabama." At the time of filing his original complaint, McFarland, who is black, had taken and failed the Alabama bar exam three times.[1]

Alleging that the bar examination and admissions process violates the Sherman Anti–Trust Act and Title VII of the Civil Rights Act of 1964, and contending that he has been denied equal protection and due process under federal and state law, McFarland sued Alabama Governor Jim Folsom; the Alabama Legislature; the Supreme Court of Alabama, and its individual justices.[2] McFarland also sued the Alabama State Bar, and its past and present presidents Clarence Small Jr. and James R. Seale; the Executive Director of the Alabama State Bar, Reginald T. Hamner; the past and present Admissions Secretaries of the Alabama State Bar, Norma Jean Robbins and Dorothy Johnson; the Alabama State Board of Bar Examiners and its president, Michael Waters. Challenging the constitutionality of state statutes related to the practice of law in Alabama, McFarland moved to amend the complaint on August 5, 1993, to include Alabama Attorney General Jimmy Evans.[3] According to the caption of the complaint, all defendants have been sued "jointly, severally in their individual capacity and as elected, appointed, and salaried state employees."

Counsel for the Governor, the Supreme Court of Alabama and its justices, and the Attorney General appeared and moved to dismiss the complaint on several grounds citing extensive authority. Through separate counsel, the Alabama State Bar, the Board of Bar Examiners, and their executive and administrative staffs appeared and also moved to dismiss citing similar authority. In response, McFarland moved to amend the com-

1. At the time of the plaintiff's complaint, the rule for the number of times an applicant could take the bar examination was as follows: "The number of times an applicant may be examined for admission to the Alabama State Bar [is] limited to five." *Rules Governing Admission to the Alabama State Bar*, Rule IV.C. McFarland's complaint states that he "has taken the bar three times and feels further attempts are futile." However, at the time of this decision, the rule has been amended to allow a candidate to take the bar examination an unlimited number of times. The rule change and its effect on this decision will be discussed in detail later in this opinion.

2. The Supreme Court of Alabama defendants include Chief Justice Sonny Hornsby; Associate Justices Hugh Maddox; Reneau P. Almon; Janie L. Shores; J. Gorman Houston; Henry B. Steagall II; Mark Kennedy; Kenneth F. Ingram; and Oscar W. Adams Jr. On October 31, 1993, Associate Justice Oscar W. Adams Jr. retired, following a long and distinguished career as a civil rights lawyer and as the first justice of African American descent to be appointed and re-elected to Alabama's Supreme Court. Governor Folsom appointed Honorable Ralph Cook, as associate justice. Pursuant to *Federal Rule Civil Procedure* 25(d)(1), Justice Cook is automatically substituted for Justice Adams as to those claims against the justices in their official capacities.

3. Defendant Jimmy Evans, in his capacity as Attorney General, would be entitled to be heard, although he is not necessary as a matter of law as a defendant in all actions challenging the constitutionality of state statutes, as plaintiff seeks to do. *Cf. ALA.CODE* § 6–6–227 (1975) ("In any proceeding ... [in which] a statute ... is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard.").

plaint again, this time to include Jimmy Clark, the Speaker of the House of Representatives of the Alabama Legislature; Gregg Pappas, Clerk of the Alabama House of Representatives; Ryan deGraffenried Jr., President Pro–Tem of the Alabama Senate of the Alabama Legislature; McDowell Lee, Secretary of the Senate; and Jim Bennett, Secretary of State, all in their official capacities only.

McFarland's complaint and putative class action seeks damages in the amount of $6 million; an order declaring the defendants' practices, policies, and procedures in violation of Title VII of the Civil Rights Act of 1964, as amended,[4] the Sherman Anti–Trust Act,[5] the United States Constitution, and the laws of the State of Alabama; and injunctive relief ordering defendants "to make whole those persons adversely affected by the actions of the State Legislature, Alabama Supreme Court and the Alabama State Bar and cause [sic] them to be immediately certified to practice law in the State of Alabama." The defendants who have been served and all defendants McFarland proposes to add have now appeared through counsel and have moved the court to dismiss this action, with prejudice.

### Jurisdiction and Venue

Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343. Personal jurisdiction is uncontested. Originally filed in the Northern District of Alabama, defendants moved, unopposed, to transfer venue to the Middle District of Alabama.[6] On August 31, 1993, District Judge Blackburn granted defendants' motions and transferred venue to the Middle District of Alabama.

4. Title VII, 42 U.S.C. § 2000e *et seq.*, of course, prohibits discrimination in employment.

5. The Sherman Act provides in pertinent part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (1973). "The terms 'contract, combination ..., or conspiracy' are used interchangeably to describe the requisite agreement between two or more persons to restrain trade."

### Standard of Review

■ "The appropriate standard for deciding to dismiss a claim is whether it appears beyond doubt that the plaintiff can prove no set of facts to support his claim." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). All facts set forth in the complaint are to be accepted as true, and the court limits its consideration to the pleadings and exhibits attached thereto. *See* Fed. R.Civ.P. 10(c); *GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993). In addition, "the Supreme Court has directed that allegations contained in a *pro se* complaint are to be held 'to less stringent standards than formal pleadings drafted by lawyers....'" *Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir.1992) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam)).

> Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.

*Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993) (citing *Powell v. United States,* 945 F.2d 374 (11th Cir.1991)). Accepting the facts as true, the court construes the complaint in the light most favorable to the plaintiff, to determine whether McFarland has stated a claim upon which any relief can be granted.

McFarland has filed *Answer[s] to Motion to Dismiss and Supporting Authority* with attachments. On October 15, 1993, the court met in conference with the plaintiff and coun-

*Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1455 (11th Cir.1991).

6. *See* 28 U.S.C. § 1391(b)(2) (1993) (requiring an action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). The entirety of the acts complained of against all defendants were performed by them in their official capacities in Montgomery, Alabama, which is located in the Middle District.

sel for the defendants. McFarland was offered the opportunity to file amendments to the claims in his complaint in reply to defendants' motions to dismiss and to provide the court with any additional materials that he deemed necessary for the court to consider. The plaintiff declined to do so.

### Preliminary Injunctive Relief

■ Although he declined the opportunity to amend his complaint or file supplemental authority, on November 10, 1993, McFarland filed two motions for additional injunctive relief. The first motion requested that the court "[i]ssue a restraining order stopping all current and future Bar examinations in the State of Alabama," and the second motion requested that the court "[i]ssue an order stopping the certifying of any additional applicant[s] as Attorneys in the state of Alabama by the Alabama Supreme Court and the Alabama State Bar until this Court has had an opportunity to resolve the issues before it." Construing his motions as motions for preliminary injunctions, the court finds that McFarland is unable to show a substantial likelihood of success on the merits of his claims. See Fed.R.Civ.P. Rule 65; Lucero v. Operation Rescue, 954 F.2d 624, 627 (11th Cir.1992); News–Journal Corp. v. Foxman, 939 F.2d 1499, 1511 n. 14 (11th Cir.1991); United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir.1983). As it will be shown below, McFarland has failed to carry his burden of proof in establishing a claim for which relief may be granted. Therefore, McFarland's motion for preliminary injunctive relief is due to be denied.

### Standing and Article III Considerations

■ McFarland's second motion for injunctive relief requests the Court to "[i]ssue a restraining order against the Alabama State Bar Disciplinary Committee with instructions to refrain from instituting any retaliatory measurements, harassment actions, or attempts on it's [sic] part to discourage currently licensed attorneys, law professors, and future attorneys from providing assistance to the Plaintiffs." McFarland alleges no facts in support of this request indicating such actions on the part of the Bar are imminent or threatened, or even contemplat-

ed as opposed to conjectural and hypothetical. This does not satisfy the justiciability requirement of Article III of the United States Constitution. Cf. City of Los Angeles v. Lyons, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983); O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). More importantly, to have standing a litigant must assert his own legal rights not those of others. See Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953). The court finds that McFarland does not have standing to assert this demand for relief on behalf of third parties who are not before the court. Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). See generally Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800 (11th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 651 (1994); United States v. Johnson, 983 F.2d 216 (11th Cir.1993).

Having declined the opportunity to amend the claims in the complaint, on November 12, 1993, McFarland filed a motion to add additional plaintiffs, which the court construes as a motion to certify a number of additional sub-classes to his class action claims contained in the complaint. McFarland proposed the addition of the following plaintiff classes:

1. All black applicants that have applied for admission to the Alabama Bar but who [have] been refused admission for whatever reason(s).

2. All black law professors that have applied to practice law in the State of Alabama, but who [have] been refused admission for whatever reasons(s).

3. All black applicants that [were] refused admission during the era of Diploma Privileges in the State of Alabama.

4. All black applicants that [were] refused admission to the Alabama Bar, that had completed the requirements from a correspondence school.

5. All black applicants that had studied under the supervision of an attorney, but [were] refused admission to the Alabama State Bar.

6. All black applicants that were refused admission to the Alabama State Bar during the era of *Reciprocity.*

7. Any other black applicant similar[ly] situated.

(Mot. to Add Pls.) (filed November 12, 1993).

McFarland's request to certify a class consisting of "all black applicants that have applied ... but been refused admission," adds nothing to his original proposed class "composed of Blacks, Whites both male and female who are law school graduates and have sat for or been denied the opportunity to sit for or have as a result of a continuing discriminatory practice ... been denied admission to the Alabama State Bar and the right to Practice Law in the State of Alabama." McFarland does not have standing to represent any proposed sub-class as defined in paragraphs 2 through 6 of his motion. *See Nelson v. United States Steel Corp.,* 709 F.2d 675, 678–80 (11th Cir.1983) (holding that plaintiff has the burden of showing commonality of claims between himself and class he proposes to represent). "In sum, [A]rticle III's command that a plaintiff and the defendant have standing to assert his claim clearly mandates more than that the plaintiff have a dispute over *something;* it means that the plaintiff and the defendant must have a justiciable dispute over the *specific claim* the plaintiff asserts." *Tucker v. Phyfer,* 819 F.2d 1030, 1034 (11th Cir.1987).

■ Rule III of the *Rules Governing Admission to the Alabama State Bar* reads in pertinent part:

No person shall be admitted to the Alabama State Bar without examination except that teachers in a law school situated in this State and accredited by the American Bar Association or American Association of Law School, who have been fulltime teachers at said law school for a period of not less that three consecutive calendar years prior to the date of their application, who have been admitted to the Bar of at least one State or the District of Columbia, and who possess the educational requirements as set forth in Rule IV, may apply to the Board of Bar Commissioners of the Alabama State Bar without examination.

Although McFarland identifies himself in the complaint as a "part-time professor at a local college where he teaches law courses" at the undergraduate level, and states that he has "accepted a position as a teacher in a paralegal school," McFarland does not allege that he is a law professor at any recognized accredited law school within the meaning of the Rule or that he has ever sought admission to the Alabama Bar without examination pursuant to Rule III. As noted earlier, a litigant must assert his own legal rights. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953). McFarland does not have standing to represent any proposed class of law professors who have been denied admission to the Alabama Bar.

In *Jones v. Alabama State Bar,* 353 So.2d 508 (Ala.1977), the Supreme Court of Alabama considered a challenge to the examination requirement by an unsuccessful black applicant who alleged that he was due to be admitted to the Alabama State Bar under the so-called "diploma privilege." A 1957 graduate of Howard University in Washington, D.C., Jones alleged that "he would have been admitted to the Bar under the 'diploma privilege' if he had attended and graduated from the University of Alabama Law School instead of an out-of-state school." *Jones,* 353 So.2d at 509. However, in 1953 when Jones began his legal education, African Americans were not admitted to the University of Alabama School of Law and "because of the social and political climate of the times, such application would have been futile." *Id.* at 509 n. 2. Jones sat for the Alabama bar exam in February and July of 1958, in February of 1959, and again in July of 1975. In 1977, the Supreme Court of Alabama declined to assume twenty years after Jones' graduation that he would have been refused admission to the University of Alabama School of Law and that had he been admitted, he would have graduated and been eligible to be admitted to the Bar under the "diploma privilege." *Id.* at 509–10.

■ The "diploma privilege" in Alabama was abolished in 1965. 46 *ALA.CODE* § 26

(1940). Since then, all applicants to the Alabama State Bar, regardless of where they attended law school, have been required to take the Alabama Bar examination. McFarland does not allege that he attended law school while the "diploma privilege" was in effect, or that his choice of law school was at all affected by the discriminatory practices in higher education in years past. McFarland's request to represent a class of all "black applicants that [were] refused admission during the era of *Diploma Privileges* in the State of Alabama" comes a quarter of a century too late.

■ Finally, McFarland does not direct the court's attention to a former statute, rule, or practice that suggests applicants to the Alabama Bar have ever been admitted following completion of the "requirements from a *correspondence school,*" or having "studied under the *supervision of an attorney,*" or that there ever existed an "era of *Reciprocity* " in Alabama. This aspect of McFarland's motion appears less directed toward any argument that he would be an adequate class representative and more toward the relief he proposes this Court might award if he is ultimately successful. For example, McFarland's request for injunctive relief in the complaint seeks an order directing defendants to "develop a more equitable examination or procedure for admission to [the] bar with alternatives for failure of the written examination." McFarland alleges no facts to suggest any of these methods have ever been utilized in Alabama or that if such had ever been the case, he has applied and would therefore have standing under any of these proposed alternatives to the bar examination. Therefore, McFarland's motion to add plaintiffs and certify additional plaintiff classes is due to be denied.

### The Eleventh Amendment

In determining whether a plaintiff has stated a claim, a court must determine whether it has jurisdiction to award the relief demanded. The Eleventh Amendment to the United States Constitution [7] defines the initial parameters of the court's jurisdiction to entertain McFarland's claims for relief.

■ First, the court does not have jurisdiction over claims against those defendant entities who are identified in the complaint simply as "the Alabama State Board of Bar Examiners," the "Alabama State Legislature," and the "Alabama Supreme Court," when Alabama is the real party in interest and when Alabama has not consented to be sued. "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). This constitutional limitation on the exercise of federal jurisdiction applies not only to the state sued in its own name, but to state agencies acting under its control, or as "arms of the state." *See Welch v. Texas Dept. of Highways and Pub. Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (per curiam); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam).

"The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state. The amendment applies even when a state is not named as a party of record, if for all practical purposes the action is against the state. Thus, the Eleventh Amendment extends to state agencies and other arms of the state." The Eleventh Amendment prohibits actions against state courts and state bars.

*Kaimowitz v. The Florida Bar,* 996 F.2d 1151, 1155 (11th Cir.1993) (citations omitted) (quoting *Schopler v. Bliss,* 903 F.2d 1373, 1378 (11th Cir.1990)).

■ Next, McFarland's demands for monetary relief against all defendants in their official capacities are barred by the Eleventh Amendment and due to be dismissed.

---

7. The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.

Although the express language of the amendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens. Lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real party in interest." In these cases, the state is considered the real party in interest because an award of damages would be paid by the state.

*Carr v. City of Florence, Alabama,* 916 F.2d 1521, 1524 (11th Cir.1990) (citations omitted) (quoting *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)); *see Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* —— U.S. ——, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Schopler v. Bliss,* 903 F.2d 1373, 1377 (11th Cir.1990); *Wu v. Thomas,* 863 F.2d 1543 (11th Cir. 1989); *Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989).

■■■■■ Finally, the entirety of McFarland's claims which seek federal declaratory and equitable relief against the defendants based upon alleged violations of state law or the Alabama Constitution are barred by the Eleventh Amendment.[8] *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see Silver v. Baggiano,* 804 F.2d 1211, 1213 (11th Cir.1986); *see also Williams v. Adkinson,* 792 F.Supp. 755, 763 n. 12 (M.D.Ala.1992), *aff'd,* 987 F.2d 774 (11th Cir.1993). The precedent binding on the court is clear: whether state statutes are in conflict with one another, or violate the *state* constitution, are ques-

tions for state courts, not federal courts, to decide.

Judge Schlesinger of the United States District Court for the Middle District of Florida considered a similar state law challenge to the State of Florida's bar admission rules:

> "Even taking Plaintiff's allegations as true—which the Court must—Plaintiffs' asserted unconstitutional delegation of power does not violate any federal constitutional rights, privileges, or immunities. If this assignment of power offends any constitutional provisions, it is not those contained in the United States Constitution, but the Florida State Constitution. The Supreme Court of Florida is the final arbiter of state law matters regarding the Constitution of the State of Florida, and this Court lacks jurisdiction to review that court's interpretation of its constitution vis-a-vis section 1983. If Plaintiffs' contentions have any merit, they are wholly state matters to be resolved by a Florida court."

*Ippolito v. State of Florida,* 824 F.Supp. 1562, 1574 (M.D.Fla.1993) (footnotes and citations omitted). The court does not have jurisdiction to consider McFarland's demands for federal equitable and declaratory relief that are based solely on allegations that state law has been violated. Therefore, those claims are due to be dismissed.

### The § 1981 Claims

■■■ McFarland seeks damages and injunctive relief pursuant to 42 U.S.C. § 1981, which prohibits racial discrimination in the formation of contracts. "Mr. McFarland is asking that he be given the same rights to offer his service[s] under a contractual basis in the practice of law as are enjoyed by over 10,000 white practitioners...." (*Answer to Mot. to Dismiss* at p. 4.) Although the court has doubts whether McFarland has stated a

---

8. The complaint alleges "[t]he defendants jointly and severally *violated the Constitution of the State of Alabama* Article One Section One and Two, Section Seven, Section Fourteen, Section Thirty–Three and Thirty–Seven." (Compl. p. 2) (emphasis added.) McFarland also "contends that Alabama law [section] 34-3-1 [defining the unlawful practice of law] *is in conflict with Alabama law*

[sections] 12–13–3 through 12–13–54 [pertaining to the powers and duties of Alabama probate judges] and as a result should be declared unconstitutional." (Compl. ¶ 6) (emphasis added). Even if the Eleventh Amendment were not a bar to federal courts from declaring Alabama statutes in conflict with one another, the court is unclear as to what the plaintiff is seeking.

claim under § 1981 upon which relief may be granted, the court "need not address it separately from the section 1983 claim. The § 1981 claim has been effectively merged into the section 1983 claim for racial discrimination." *Busby v. City of Orlando,* 931 F.2d 764, 771–72 n. 6 (11th Cir.1991). "The Supreme Court has ruled that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units...." *Pearson v. Macon–Bibb County Hosp. Auth.,* 952 F.2d 1274, 1278 n. 3 (11th Cir.1992) (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598 (1989)). Thus, McFarland "has no claim for damages against the defendants in this case under § 1981. To the extent that injunctive relief remains available to him under § 1981, it would simply duplicate the equitable relief he could receive under § 1983." *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991).

### The § 1983 Claims

 In order to state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege he has been deprived or suffered the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States by a "person" acting under color of state law. 42 U.S.C. § 1983.[9]

 The phrase "Constitution and laws" encompasses violations of federal statutory as well as constitutional rights. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 105, 110 S.Ct. 444, 447, 107 L.Ed.2d 420 (1989). Liberally construed, McFarland's § 1983 claims for damages, injunctive, and declaratory relief are four-fold: defendants' actions violate (1) the Sherman Antitrust Act; (2) Title VII of the Civil Rights

9. The court notes that a state supreme court, is not a "person" within the meaning of 42 U.S.C. § 1983. *Moity v. Louisiana State Bar Ass'n,* 414 F.Supp. 180 (E.D.La.), *aff'd,* 537 F.2d 1141 (5th Cir.1976). The same holds true for the state legislature, the state bar, and the state board of bar commissioners. The justices of the Alabama Supreme Court have, however, also been sued in their official capacities for purposes of declarato-

Act of 1964; (3) the Equal Protection Clause of the Fourteenth Amendment; and (4) the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### Absolute Judicial Immunity

 In regard to the whether the defendants may be held liable for damages, the court must decide whether the defendants are entitled to immunity. Undeniably, the individual justices of the Supreme Court of Alabama are entitled to absolute judicial immunity as to those claims for damages against them in their individual capacities. *See, e.g., Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam); *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Recent opinions since *Forrester* reflect that the question of immunity depends, however, upon a functional analysis, not form or title.

The Court of Appeals for the Eleventh Circuit and the former Courts of Appeals for the Fifth Circuit have adopted a four part test to determine whether a judicial officer is entitled to absolute judicial immunity:

(1) the precise act complained of ... is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*Emory v. Peeler,* 756 F.2d 1547, 1553 n. 14 (11th Cir.1985); *see Harris v. Deveaux,* 780 F.2d 911, 914 (11th Cir.1986); *Harper v. Merckle,* 638 F.2d 848, 858 (5th Cir.1981), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). In addition, courts have held that "[t]here are situations in which

ry and injunctive relief, and in their individual capacities for damages, and as such *are* considered "persons" under § 1983. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

immunity must be afforded even though one or more of the ... factors fails to obtain." *Adams v. McIlhany,* 764 F.2d 294, 297 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *accord Harris v. Deveaux,* 780 F.2d 911, 914 (11th Cir.1986).

There is no allegation that the justices acted or are acting in the "clear absence of all jurisdiction." McFarland's complaint acknowledges that the justices of the Supreme Court of Alabama have " 'inherent, plenary and continuing' authority to determine who practices law...." (Compl. ¶ 8.) At all times relevant to the complaint, McFarland had been dealing with the defendant justices of the Alabama Supreme Court in their judicial capacities and with the respective members of the Alabama Bar and the Board of Bar Commissioners as agents of the Alabama Supreme Court. *See Carroll v. Gross,* 984 F.2d 392 (11th Cir.) (affirming the district court's dismissal of § 1983 action against Florida state bar officials charged with violating plaintiff's right to due process), *cert. denied,* —— U.S. ——, 114 S.Ct. 254, 126 L.Ed.2d 206 (1993); *Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.1978) (finding that the members of state bar grievance committee were immune from suit because they acted as arm of state supreme court), *overruled on other grounds, Sparks v. Duval County Ranch,* 604 F.2d 976, 978 (1979) (en banc), *aff'd sub nom. Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

 Federal courts have consistently held, as a matter of federal law, that admission to a jurisdiction's bar is neither a legislative, administrative, nor ministerial act, but is peculiarly a judicial function, for it is within the exclusive province of the judiciary to determine who is to be permitted to practice before the courts. *See District of Columbia Ct. of App. v. Feldman,* 460 U.S. 462, 476–82, 103 S.Ct. 1303, 1311–15, 75 L.Ed.2d 206 (1983); *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945); *cf. Sullivan v. Alabama State Bar,* 295 F.Supp. 1216, 1221 (M.D.Ala.) (finding that the powers conferred upon the Board of Commissioners of the Alabama State Bar are more judicial than legislative in nature), *aff'd,* 394 U.S. 812,

89 S.Ct. 1486, 22 L.Ed.2d 749 (1969); *Board of Comm'rs of the Ala. State Bar v. State ex rel. Baxley,* 295 Ala. 100, 324 So.2d 256 (1975) (canvassing state and federal cases in considering the question whether the regulation of admission to practice law is a "judicial function," and answering in the affirmative). The individual justices of the Supreme Court of Alabama, the past and present presidents of the Alabama State Bar, Clarence Small Jr. and James R. Seale; its Executive Director Reginald T. Hamner; the past and present Admissions Secretaries of the Alabama State Bar, Norma Jean Robbins and Dorothy Johnson; and the Alabama State Board of Bar Examiners and its president, Michael Waters are all entitled to absolute judicial immunity, as to those claims for damages against them in their individual capacities. Therefore, McFarland's claims for damages against them are due to be dismissed, with prejudice.

**Absolute Legislative Immunity**

 The Secretary of State and the members of the House of Representatives and Senate of the Alabama Legislature appear to have been sued in their *official* capacities only. Construing the pleadings in a light most favorable to the plaintiff, the court will assume that he also seeks monetary damages against the legislative or executive branch defendants in their *individual* capacities due to their respective roles in the legislative process and the enactment of statutes pertaining to admission to the Alabama bar. Each of those defendants are entitled to absolute legislative immunity. *See Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

 Similarly, the individual justices of the Alabama Supreme Court, and the members of the Alabama State Bar and Board of Bar Examiners are all entitled to absolute legislative immunity as to all claims for damages against them for their respective roles in promulgating the *Rules Governing Admission to the Alabama State Bar.* *See Supreme Ct. of Va. v. Consumers Union of the United States,* 446 U.S. 719, 734, 100 S.Ct.

1967, 1976, 64 L.Ed.2d 641 (1980) ("Thus the Virginia Court and its members are immune from suit when acting in their legislative capacity.").

## Qualified Immunity

■■■ Defendants also assert that they are entitled to qualified immunity in their individual capacities from the entirety of McFarland's individual and class-based claims for damages.[10] *See e.g., Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As noted by the Supreme Court, the defense of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). "It is enough for immunity that—in the light of case law ... a reasonable public official in the circumstances ... could have concluded that his actions did not violate [plaintiff's] rights." *McDaniel v. Woodard,* 886 F.2d 311, 316 (11th Cir.1989); *see Adams v. St. Lucie County Sheriff's Dept.,* 998 F.2d 923 (11th Cir.1993) (en banc). The court finds that the defendants acting as reasonable public officials would not have concluded that they violated the plaintiff's constitutional rights. Thus, the court finds that the defendants are entitled to qualified immunity. The defendants are also entitled to either absolute judicial or legislative immunity, as found above. However, if they were not afforded the protection of absolute judicial and legislative immunity from liability, qualified immunity would bar the entirety of plaintiff's claims for damages against the defendants in their individual capacities.

## Unnecessary Parties

■■■ Governor Jim Folsom, each defendant member of the Alabama Legislature, the Attorney General, and the Secretary of State argue that they are due to be dismissed because, they contend, that they are not involved in the licensing process for attorneys and that they cannot afford the plaintiff the equitable relief that he seeks. Because the court agrees, those defendants, who are members of the executive or legislative branches of the State of Alabama, are due to be dismissed, and they may not be held liable for equitable or legal relief either in their official or individual capacities.

■■ Admission to practice law before the state courts in the State of Alabama is within the exclusive province of the Supreme Court of Alabama, the justices of which are each members of the judicial branch of the state. The Governor, Attorney General, Secretary of State and each member of the legislature that the plaintiff proposes to add are not part of the judicial branch, and they are in no posture to afford plaintiff any relief as a matter of Alabama law. *Cf. Board of Comm'rs of the Ala. State Bar v. State ex rel. Baxley,* 295 Ala. 100, 324 So.2d 256 (1975). Thus, it appears as a matter of state law interpreting the doctrine of separation of powers under Alabama law that none of the executive or legislative branch defendants are in a position to afford the plaintiff or any putative plaintiff class any equitable relief.

■■■ The plaintiff in his complaint challenges *Code of Alabama* § 34-3-1 (regulating the unlawful practice of law), § 34-3-2 (establishing the board of bar examiners), § 34-3-6 (defining the practice of law and who may practice as attorneys), and § 34-3-40 (establishing the board of commissioners of the Alabama State Bar), as vague and overbroad and therefore due to be declared unconstitutional. Based upon these code sections, McFarland seems to argue that the Alabama Legislature does indeed control who may practice law in the State of Alabama, and that the Governor who signs legislation is also necessary and indispensable party to the process.[11]

---

**10.** Qualified immunity is not a defense to McFarland's Title VII claims. "But defendants could assert qualified immunity once plaintiffs tried to recover damages under section 1983 for the alleged Title VII violation." *Wu v. Thomas,* 996 F.2d 271, 273 (11th Cir.1993).

**11.** McFarland's complaint asserts that the justices of the Supreme Court of Alabama have

The arguments McFarland tenders to the court—as to why the Legislature, the Governor, the Secretary of State, and the Attorney General are necessary and indispensable parties—are strikingly similar to those presented by the Alabama Attorney General to the Alabama Supreme Court in *Baxley* almost twenty years ago:

> It is the contention of the Attorney General and intervenors that the legislature may exercise regulation over bar examinations if such regulation does not impair the judicial branch's exercise of its inherent functions; that the legislature has done so for over fifty years; that the judiciary has acquiesced in such regulation; and that the Board is a legislatively created authority and not an arm of the Supreme Court.

*Baxley*, 324 So.2d at 257. The Supreme Court of Alabama squarely rejected the arguments presented and held that legislative encroachment into the exclusive judicial domain of determining who is qualified to practice before the state courts violates the separation of powers guaranteed by Alabama's Constitution.

> We have repeatedly held, as recently as April 10, 1975, in *Simpson v. Alabama State Bar*, 294 Ala. 52, 311 So.2d 307, 309 (1975):
>
> "... The Board was created in aid of this court, which has the inherent jurisdiction to admit attorneys practice of law and to suspend or disbar them...."

Although the Board was created by the legislature, it was created as an arm of this court and any action by the Board is subject to review or approval by this court. The legislature has not created an entity which is not subject to control or regulation, the Board is subject to the control of this court....

This court is compelled under our system of government, to guard against such encroachments by one branch of government into the sphere reserved to another equal branch.

*Id.* at 262–63; *accord Jones v. Alabama State Bar*, 353 So.2d 508 (Ala.1977).[12] Unquestionably, the Supreme Court of Alabama continues to retain plenary authority over the admission of attorneys to practice before its courts, to the exclusion of the other branches of state government.[13]

That the Alabama statutes regulating the practice of law and pertaining to admissions qualifications McFarland challenges have not been specifically held unconstitutional by the Alabama Supreme Court does not alter the analysis.

> It is true that this Court has recognized legislative power to prescribe minimum requirements for admission to the bar so long as they do not interfere with the inherent power of the court to determine who shall practice before it. *Ex parte Dozier*, 262 Ala. 197, 77 So.2d 903 (1955). But the fact that this court has not been as active in formulating rules governing *ad-*

"been given the supreme authority to determine who practices law in the state of Alabama *by the legislature.*" (Compl. ¶¶ 4–6) (emphasis added.) The plaintiff misstates the law. The Supreme Court of Alabama's authority to determine who may practice before its courts emanates from the Alabama Constitution, not the law promulgated by the legislature. *Board of Comm'rs of the Ala. State Bar v. State ex rel. Baxley*, 295 Ala. 100, 324 So.2d 256 (1976).

12. *See Parrish v. Board of Comm'rs of Ala. State Bar*, 524 F.2d 98, 104 (5th Cir.1975) (en banc) (recognizing that the board of commissioners "is a judicial organ of the state"), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Sullivan v. Alabama State Bar*, 295 F.Supp. 1216 (M.D.Ala.), *aff'd*, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 749 (1969) (finding that the powers of the Alabama state bar and board of commissioners are in aid of the Alabama Supreme Court and

as such are more judicial than legislative in nature).

13. The complaint appears to anticipate this holding: "Plaintiff's [sic] contends that since the Alabama Supreme Court has 'inherent, plenary and continuing' authority to determine who practices law, the court also without legislation has the authority to fashion any other remedy for admission such an internship, and additional examinations as it deems appropriate." (Compl. ¶ 8.) Whether this is an inadvertent acknowledgement *that the respective members of both houses of* the state legislature, the governor, the attorney general, and the secretary of state are not necessary and indispensable parties, or merely an affirmative declaration that the Alabama Supreme Court and its justices *would be* appropriate defendants with respect to the relief demanded, the court considers both interpretations in deference to McFarland who is acting *pro se.*

*mission* to the bar (as it has in adopting rules governing the practice of law) but rather has left this function largely to the Board of Bar Commissioners, acting on its behalf, does not mean that it has abrogated its authority and responsibility to the legislature, if in fact such power is inherent to the judiciary. In fact, it cannot relinquish its authority to another branch of government under the express provisions of the constitution of this state.

*Baxley,* 324 So.2d at 258–59.

The legislature and the executive branches of state government play no part, and their respective officers are not necessary, nor are they indispensable, to the relief sought merely because of their participation in the state's legislative process. The motions to dismiss McFarland's claims for equitable and declaratory relief against Governor Jim Folsom; Attorney General Jimmy Evans; Speaker of the House of Representatives of the Alabama Legislature Jimmy Clark; Clerk of the House of Representatives Gregg Pappas; President Pro–Tem of the Alabama Senate Ryan deGraffenried Jr.; Secretary of the Senate McDowell Lee; and Secretary of State Jim Bennett are due to be granted.

### The Sherman Act Claims

■ McFarland asserts that "the Bar and the examination were set up in violation of the Sherman Anti–Trust Act to eliminate blacks and others from the right to practice law in the state of Alabama;" and that *Code of Alabama* §§ 34–3–2, 34–3–6, 34–3–40 through 34–3–44, and §§ 34–3–80 through 34–3–89 are an illegal "attempt to create a monopoly in a 'learned profession,' the practice of law, in violation of the Federal Anti–Trust laws." McFarland's attacks on the state statutes do not entitle him to relief, because, as discussed previously, it is the Supreme Court of Alabama, not the legisla-

ture, which determines who may practice law.

■ McFarland does not directly challenge the *Rules Governing Admission to the Alabama State Bar,* promulgated by the supreme court. However, he does challenge the rules governing admission *as administered* by the Board of Bar Examiners and the Alabama State Bar. "In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307 [87 L.Ed. 315 (1943)], the Supreme Court held that the Sherman Act does not apply to the anticompetitive conduct of states acting as sovereigns." *Askew v. DCH Reg. Health Care Auth.,* 995 F.2d 1033, 1037 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 603, 126 L.Ed.2d 568 (1993). Precisely identical Sherman Act claims have been brought against various state bars, and against the Alabama State Bar in particular. Courts have consistently held in the cases cited below that the Sherman Act is inapplicable.

In *Foley v. Alabama State Bar,* 481 F.Supp. 1308, 1311 (N.D.Ala.1979), *aff'd,* 648 F.2d 355 (5th Cir. Unit B June 1981), rejecting a Sherman Anti–Trust Act claim against the Alabama State Bar's enforcement of its disciplinary rules, the district court found that "the rules fall squarely within the state action exception to the Sherman Anti–Trust Act." Affirming on other grounds, Unit B of the former Court of Appeals for the Fifth Circuit [14] held "that the district court was correct in denying the plaintiffs' motion to enjoin the Bar's attempted enforcement of the disciplinary rules, and, also, in holding the antitrust claim barred by the state action exemption." *Foley v. Alabama State Bar,* 648 F.2d 355 (5th Cir. Unit B June 1981) (citing *Bates v. State Bar of Az.,* 433 U.S. 350, 362, 97 S.Ct. 2691, 2698, 53 L.Ed.2d 810 (1977); *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943)). [15] In light of this well-established precedent, McFarland's

---

14. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Court of Appeals for the Eleventh Circuit, the decisions of which are binding on the court, adopted as precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981; and in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

15. Other courts presented with the same issue agree. *See Feldman v. Gardner,* 661 F.2d 1295, 1303–08 (D.C.Cir.1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3483, 73 L.Ed.2d 1366 (1982); *cf. District of Columbia Court of Apps. v. Feldman,* 460 U.S. 462, 474 & n. 11, 103 S.Ct. 1303, 1310 & n. 11, 75 L.Ed.2d 206 (1983).

Sherman Act claims are due to be dismissed, with prejudice.

### The Title VII Claims

■ McFarland "contends that the Bar examination is an employment selection device wrongly instituted in 1975, in violation of Title [VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.]." (Compl. p. 4.) Later in his complaint, McFarland "contends the Alabama State Bar is a regulatory agency and subject to the Title [VII] laws."

In a similar case decided nearly twenty years ago, the Court of Appeals for the Fifth Circuit examined the admissions and examination practices of the Georgia State Bar. The court held that: "Title VII does not apply by its terms, of course, because the Georgia Board of Bar Examiners is neither an "employer," an "employment agency," nor a "labor organization" within the meaning of the statute." *Tyler v. Vickery*, 517 F.2d 1089, 1096 (5th Cir.1975) (construing the meaning of employer, employment agency, and labor organization under 42 U.S.C. § 2000e), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976).

If there were any arguable distinction to be made between the Georgia bar exam and Alabama's examination and admissions process, which McFarland challenges, the former Fifth Circuit disposed of that issue in their holding in *Parrish v. Board of Commissioners of the Alabama State Bar:*

> In *Tyler* the Court held that Title VII as interpreted by the Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) to require validation has no application to the Georgia State Bar Examiners. We see no basis for distinguishing that case from the Alabama case now before us.

*Parrish v. Board of Comm'rs of the Ala. State Bar*, 533 F.2d 942, 949 (5th Cir.1976), *cert. denied* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). Other courts are in accord. *See Delgado v. McTighe*, 442 F.Supp. 725 (E.D.Pa.1977) (holding that Title VII is inapplicable to bar examiners in a case involving Pennsylvania State Bar); *Woodward v. Virginia Bd. of Bar Examiners*, 420 F.Supp. 211, 212 (E.D.Va.1976) (finding that Title VII was inapplicable to the Virginia State Bar examiners), *aff'd*, 598 F.2d 1345 (4th Cir.1979). McFarland's demands for relief under Title VII fail to state a claim upon which relief can be granted and are due to be dismissed, with prejudice.

### The Equal Protection Claims

McFarland asks the court to "[d]eclare the right to practice law a fundamental right to all persons qualified by learning irregardless of race, intellectual levels, social status, national origin or political affiliation." (Compl. ¶ 5.) Obviously, a "[s]tate cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). However, no court has ever declared that there exists a fundamental right to practice law. "There is no vested right in an individual to practice law." *In re Isserman*, 345 U.S. 286, 289, 73 S.Ct. 676, 677, 97 L.Ed. 1013 (1953). The Supreme Court "has never held that the right to pursue a particular occupation is a fundamental right...." *Jones v. Board of Comm'rs of the Ala. State Bar*, 737 F.2d 996, 1000 (11th Cir.1984).

The question of "whether the practice of law is a 'right' or 'privilege,'" has never been addressed by a clear majority of the Supreme Court. *Schware*, 353 U.S. at 239 n. 5, 77 S.Ct. at 756 n. 5. The most that the Supreme Court has been willing to hold is that "[c]ertainly the practice of law is not a matter of the State's grace." *Id.*

McFarland cites *Baird v. State Bar of Arizona*, 401 U.S. 1, 8, 91 S.Ct. 702, 707, 27 L.Ed.2d 639 (1971), in support of his argument that the "practice of law is a right." The case is inapposite. A plurality of the Court held that under the First Amendment the State of Arizona could not deny admission to the Bar to an applicant who had *successfully passed* the state bar examination, but had refused to answer a question as to whether she had ever been a member of the Communist Party or any organization that advocated the violent overthrow of the

United States Government. Justice Blackmun, joined by Chief Justice Burger and Justices Harlan and White, criticized Justice Black's statement that the "practice of law is not a matter of grace, but of right" as "little more than an exercise in semantics," *Id.* at 19, 91 S.Ct. at 712, which even Justice Black limited to *"one who is qualified by his learning and his moral character."* *Baird,* 401 U.S. at 8, 91 S.Ct. at 707 (emphasis added).[16] McFarland's complaint, however, contains no First Amendment claims, and he has not been denied admission after having successfully passed the Bar exam, as was true in *Baird.*

■■■ The responsibility to regulate the practice of law within state courts has been delegated to that state's supreme court. The Court in *Randall v. Brigham,* 74 U.S. (7 Wall.) 523, 19 L.Ed. 285 (1868), illuminated the breadth of a supreme court's responsibility and the importance of insuring that lawyers be equipped with not only the legal knowledge to fulfill their vital role in society, but also the moral fibre to handle society's trust.

The authority of the court over its attorneys and counsellors is of the highest importance. They constitute a profession essential to society. Their aid is required not merely to represent suitors before the courts, but in the more difficult transactions in private life. The highest interests are placed in their hands and confided to their management. The confidence which they receive and the responsibilities which they are obliged to assume demand not only ability of a high order, but the strictest integrity. The authority which the courts hold over them, and the qualifications required for their admission are intended to secure those qualities.

*Randall,* 74 U.S. (7 Wall.) at 540. The question remains, then, what limitations the United States Constitution places upon the states' discretion to determine "who is qualified by learning."

■■■ In his own words, McFarland "does not dispute the need for an examination." [17] But he asserts that the defendants have conspired to violate the equal protection rights of black applicants to the bar who are graduates of unaccredited law schools.[18] "The

---

**16.** The addition in *Baird* of the condition "for one who is qualified by learning and moral character," to the *Schware* Court's unanswered question whether the "practice of law is a right," explains Justice Blackmun's criticism of Justice Black's opinion as an "exercise in semantics," but this dicta cannot be construed as a declaration of a new fundamental right. Perhaps McFarland does not say that it does, for his request that the Court declare "the right to practice law a fundamental right," itself falls prey to the same self-proving conditional truism: for "all persons qualified by learning and moral character." At least one federal district court has declared recently that the "right to practice law, however, is *not* a privilege or immunity within the meaning of the Fourteenth Amendment." *Ippolito v. State of Florida,* 824 F.Supp. 1562, 1573 (M.D.Fla.1993) (emphasis added).

**17.** *Tyler v. Vickery,* 517 F.2d 1089, 1089 (5th Cir.1975) ("Appellants concede, as they must, that the state has a legitimate and substantial interest in excluding from the practice of law those persons who do not meet its standards of minimal competence and that the Georgia examination, as presently constituted, tests skills and knowledge which have a 'logical, apparent relationship' to those necessary to the practice of law."); *see Jones,* 737 F.2d at 1001 (holding that the State of Alabama has a legitimate interest in ensuring a competent Bar); *see also Goldfarb v.*

*Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975) ("We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.")

**18.** As noted previously, McFarland is a graduate of The Birmingham School of Law, which is an unaccredited institution. Graduation from an accredited institution is a general prerequisite for being permitted to sit for the Alabama Bar exam under rules promulgated by the Supreme Court of Alabama. *Cf. R.Governing Admission Ala. State Bar* IV.B. However, graduates from the Birmingham School of Law, Jones School of Law of Faulkner University in Montgomery and Miles College of Law in Birmingham are permitted to sit for the Alabama Bar exam, even though the schools are not accredited by the American Bar Association or the American Association of Law Schools. *See ALA.CODE* § 34–3–2.1 (1975); *see also R.Governing Admission Ala.State Bar* IV.C. McFarland's argument that graduates from unaccredited law schools are discriminated against loses considerable force when it is considered that the Supreme Court of Alabama could, without offending the Constitution, amend Rule IV.C. and not allow graduates from unac-

Plaintiff contends that the Bar has and continues to discriminate against graduates from non-accredited law schools. The Plaintiff contends that Black Law graduates are passed at a lower rate than other Non-Blacks and required to take the examination more times than other Non–Blacks because of vestiges of invidious discrimination." (Compl. p. 4.) In support, McFarland "contends that the number, themselves of black lawyers when compared to the number of whites, establishes a prima facie case of discrimination." *(Id.)* Even considering these facts as true and in a light most favorable to the plaintiff, these assertions still fail to state a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment.

 Less than ten years ago, the Court of Appeals for the Eleventh Circuit held that "proof of discriminatory purpose is required to show a violation of the equal protection clause." *Jones,* 737 F.2d at 1003. Disproportionate impact, "[s]tanding alone, ... does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations." *Id.* at 1004. In order to prove a violation of the Equal Protection Clause, McFarland "must show that the challenged action was 'taken at least in part' because of, not 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *Jones,* 737 F.2d at 1004. Statistical disparity between the passing rates of black and white applicants of the bar examination is not prima facie proof of intentional discrimination sufficient to invoke equal pro-

tection analysis. *See Tyler,* 517 F.2d at 1099.[19]

McFarland contends that he has met his burden under *Jones v. Board of Commissioners of the Alabama State Bar.* McFarland offers proof which includes a showing of statistical disparity in examination results along racial lines in addition to historical evidence that the Alabama Constitution of 1901 was, to a substantial degree, motivated by racial considerations. In his *Answer to Motion to Dismiss and Supporting Authority,* McFarland argues:

> The constitutional convention of 1901, is referred to as the *Lawyers' Convention* (96 lawyers out of 155 delegates). These delegates segregated and disenfranchised black citizens by legal means (Exhibit # 2, page 268). The lawyers in this state stated that the negro was inferior due to his intelligence. This monopoly is borne out by the small number of black lawyers in the State of Alabama, as directed by the *Lawyers' Convention of 1901.*
>
> . . . .
>
> The dictates of discrimination today, is being carried on by the descendants, heirs and assigns of the *Lawyers' Convention* of 1901. This inheritance of discrimination of the judiciary is in *fee simple absolute.* The late senator [sic] Heflin put it succinctly at the Lawyers' Convention in 1901, by stating that *God Almighty intended the negro to be the servant of the white man.* (Exhibit # 2, page 305).
>
> . . . .
>
> The plaintiff in this case offer[s] the statistical date of the Bar plus Exhibit # 2, the *Lawyers' Convention of 1901* in the

---

credited schools to sit for the exam altogether. *See Moity v. Louisiana State Bar Ass'n,* 414 F.Supp. 180, 183 & n. 12 (E.D.La.) (finding that the Fourteenth Amendment does not prohibit states from requiring "reasonable standards for Bar admission and to make reasonable changes in those standards from time to time"), *aff'd,* 537 F.2d 1141 (5th Cir.1976).

**19.** In *Tyler,* the former Fifth Circuit noted:

The gravamen of [plaintiffs'] argument is that the disproportionate passing rates of black and white applicants on the examination serve to create the classification based on race which is needed to trigger strict judicial scrutiny. The

difficulty with this position, however, is that it stands in the face of a clear body of law holding that an otherwise legitimate classification does not become constitutionally "suspect" simply because greater numbers of a racial minority fall in the group disadvantaged by the classification.

*Tyler,* 517 F.2d at 1099. In this case, however, the "classification" that the court is concerned with is the difference between those applicants who, as a result of the examination process, the Alabama State Bar and Supreme Court of Alabama have declared are competent to practice law and those individuals who have been declared incompetent to practice law.

State of Alabama. The above stated facts meet the standard of *Jones v. Board of Comm'rs,* 737 F.2d [996] (11th Cir.1984). (*Answer to Mot. to Dismiss* p. 4–6.).

The evidence McFarland offers as proof of *present day* discriminatory purpose and intent is more than 90 years old and is not sufficient to sustain a challenge to the admission process to the Alabama State Bar. McFarland's argument fails to consider the intervening changes in and restructuring of Alabama's judicial system and the implementation of the Judicial Article some 70 years later. *See e.g. Board of Comm'rs of Ala. State Bar v. State ex rel. Baxley,* 295 Ala. 100, 324 So.2d 256, 264 (1975) (Maddox, J., concurring specially).[20]

 Absent an offer of proof of *present day* intent to discriminate, the entirety of plaintiff's class based claims are barred by the doctrine of collateral estoppel. An identical class action has already been brought against the Alabama State Bar involving a

> class defined as "all Black persons who have applied or will apply for admission to the Alabama Bar, or who would have so applied but for having been discouraged or prevented from doing so by the [defendant's] discriminatory practices" and who meet all valid non-discriminatory standards for admission.

*Parrish v. Board of Comm'rs of the Ala. State Bar,* 533 F.2d 942, 944 (5th Cir.1976) (alteration in original).

Identical legal claims alleging intentional discrimination in the Bar examination and admissions process and alleging identical facts against the Alabama Supreme Court and the Bar have already been litigated and adjudicated adversely to McFarland's proposed plaintiff class by the United States District Court for the Northern District of Alabama. McFarland's complaint is predicated upon the same allegations and "vestiges of discrimination" arguments asserted in *Parrish* as evidence of intentional discrimination. In the absence of any allegations of changed circumstances or different facts since the days of *Parrish,* plaintiff's class-based equal protection claims are collaterally estopped from being heard by the court's by the *Parrish* case.

The Alabama Supreme Court itself has been required to address "vestiges of discrimination" arguments tendered in view of the fact that Alabama for many years maintained a "diploma-privilege," which had the practical effect of discriminating against black applicants. Prior to August 31, 1965, graduates from the University of Alabama School of Law were admitted to the bar without an examination under the so-called "diploma privilege." 46 *Ala.Code* § 26 (1940). Blacks were not permitted to attend the University of Alabama until it was desegregated by a federal court order in the mid–1960's. As such, black law students were required to attend law school outside of Alabama, and if they wished to practice in Alabama, to take the Alabama Bar Exam. In 1977, the Alabama Supreme Court ruled that regardless of what the state of the law might have been at one time, the supreme court by legislative fiat retained "inherent[,] plenary[, and] continuing" authority to admit applicants to the bar; and it is not unreasonable to interpret that decision as having renounced all claims of heirship to the discriminatory practices of the Alabama Legislature that McFarland would impute to that Court as the "descendants, heirs and assigns of the *Lawyers' Convention* of 1901." "While we appreciate the fact that Jones' decision not to apply to attend the University of Alabama Law School may have been influenced by *the laws and customs in force during the 1950's,* we cannot say that had he applied, his application would have been refused because of his race." *Jones v. Alabama State Bar,* 353 So.2d 508, 509–10 (Ala.1977) (emphasis added).

**20.** Justice Hugh Maddox, a distinguished and learned jurist, opined:

> Another reasons why I concur specially is that I believe that the new Judicial Article, (Amendment 328, Constitution of Alabama, 1901, carried as Article VI in Vol. I of Michie's Code of Alabama 1940, Recompiled 1958, 1973 Cumulative Supplement) is controlling. In other words, the new Judicial Article restructured the court system and redistributed the "judicial power" of this state, and I believe that this case and future cases must be governed by the "Article's provisions."

*Id.* (Maddox, J., concurring specially).

■ The relevant question is whether the current scheme was instituted with discriminatory intent, not the schemes employed in the past.[21] To prevail, McFarland must show that the Alabama State Bar Board of Commissioners in adopting the *Rules Governing Admission to the Alabama State Bar* and the Alabama Supreme Court in enforcing those rules intended to discriminate against African Americans, particularly McFarland.

The most recent evidence McFarland offers to prove discriminatory purpose and intent is over 40 years old at best and consists only of evidence of admissions practices of the Alabama State Bar *prior* to the implementation of the Judicial Article and Amendment 328, prior to the Alabama Supreme Court's decisions in *Simpson v. Alabama State Bar*, *Board of Commissioners v. State ex rel. Baxley,* and *Jones v. Alabama State Bar*, prior to the Fifth Circuit's decisions in *Tyler v. Vickery* and *Parrish v. Board of Commissioners of the Alabama State Bar*, and prior to the Eleventh Circuit's decision in *Jones v. Alabama State Bar.* McFarland has failed to allege sufficient relevant and probative facts in support of his equal protection claims to withstand defendants' motions to dismiss.

### Due Process

The precise nature of the plaintiff's due process claims is unclear. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). Due process merely requires that the state provide a fair procedure before depriving an individual of a protected liberty or property interest. Property interests are defined by state law.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. *He must have more than a unilateral expectation of*

*it. He must, instead, have a legitimate claim of entitlement to it.*

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1175 (11th Cir.1993). "Liberty interests are both broader and more difficult to define than property interests. While property exists in concrete entitlements secured by independent sources of law, liberty interests cannot be so easily characterized." *Bank of Jackson County v. Cherry,* 980 F.2d 1362, 1367 (11th Cir.), *cert. denied,* ⸺ U.S. ⸺, 114 S.Ct. 73, 126 L.Ed.2d 42 (1993). "Liberty interests protected by the due process clause of the fourteenth amendment may arise either from the Constitution itself or from state law." *Francis v. Fox,* 838 F.2d 1147, 1149 (11th Cir.1988) (quoting *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983)).

■ There is no unqualified right to practice law under the Constitution. To the extent McFarland relies upon state law to establish his liberty interest, if state law is framed "in discretionary terms there is not a liberty interest created." *Thomas v. Sellers,* 691 F.2d 487, 489 (11th Cir.1982) (per curiam).

Stated simply, "a State creates a protected liberty interest by placing substantive limitations on official discretion." A State may do this in a number of ways. Neither the drafting of regulations nor their interpretation can be reduced to an exact science. Our past decisions suggest, however, that the most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official decisionmaking, *Hewitt v. Helms,* 459 U.S., at 472, 74 L.Ed.2d 675, 103 S.Ct. 864 [871], and, further *by mandating the outcome to be reached upon a finding that the relevant criteria have been met.*

---

**21.** Amendment 328 to the Constitution of the State of Alabama wholly "restructured the court system and redistributed the 'judicial power' of this state." *Baxley,* 324 So.2d at 264 (Maddox, J., concurring specially). Therefore, McFar-

land's argument that discriminatory intent has been bootstrapped into the current system through the "Lawyers Convention of 1901" is unfounded.

*Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (citations omitted) (emphasis added) (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)).

If it can be argued the Alabama Supreme Court has created a liberty or property interest anywhere in the admissions process, it would be in the "right" to have the examination graded correctly, according to "substantive predicates." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871; *see Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909. Although he would characterize the bar exam as an "examination of memory," McFarland does not contend his examination was graded incorrectly. Thus, and assuming there was a deprivation of a liberty or property interest created by state law, the question remains whether McFarland was denied procedural due process.

> To prevail upon [a] procedural due process claim, [a plaintiff] must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. Failure to establish any one of these elements is fatal to [a] due process claim.

*Bank of Jackson County v. Cherry,* 980 F.2d 1362, 1366 (11th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 73, 126 L.Ed.2d 42 (1993). Although the court is not convinced that McFarland has met the first two elements of his due process claim, the Court will proceed directly to the third element: whether the procedures accompanying the alleged deprivation are constitutionally inadequate.

■ In his complaint McFarland challenges as violative of the United States Constitution "the number of times an applicant can sit for the State Bar Examination." (Compl. ¶ 7.) However, according to his complaint, McFarland has only taken the exam three times. At the time McFarland filed his complaint, an applicant for admission was permitted to take the bar five times. *See Rules Governing Admission to the Alabama State Bar,* Rule IV.C. ("The number

of times an applicant may be examined for admission to the Alabama State Bar shall be limited to five.") (amended effective April 28, 1993). That McFarland "has taken the bar three times and feels further attempts are futile," as he states in his complaint, does not, however, confer standing upon him to raise a due process challenge to the number of times an applicant may take the examination. *Jones,* 737 F.2d at 998 n. 6. "[O]ne challenging a statute [or rule] must demonstrate that he is immediately injured or jeopardized by its operation." *Kaimowitz v. The Florida Bar,* 996 F.2d 1151, 1153 (11th Cir. 1993) (citing *International Tape Mfrs. Ass'n v. Gerstein,* 494 F.2d 25, 28 (5th Cir.1974)).

■ By Order dated January 6, 1994, the Supreme Court of Alabama amended Rule IV of the *Rules Governing Admission to the Alabama State Bar* to read as follows:

> D. *Limitation on Examinations.* The number of times and applicant may be examined for admission to the Alabama State Bar shall be unlimited.
>
> (Section D amended effective April 28, 1993; and January 6, 1994)
>
> IT IS FURTHER ORDERED that this amendment be effective immediately.

The court has ruled earlier that McFarland does not have standing in this case to challenge Rule IV applicable to the number of times an applicant may take an examination because he had not taken the maximum number of times, i.e., five times in this instance. However, even if this court were to have ruled that the plaintiff had standing, the issue would now be moot.

■ Furthermore, assuming McFarland had standing to challenge the number of times an applicant may sit for the examination, his remaining due process challenges fail because McFarland will be unable to establish the third element of an alleged due process violation: the "constitutional inadequacy of procedures accompanying the deprivation," *Jackson County,* 980 F.2d at 1366. Rule VI.I.(3) of the *Rules Governing Admission to the Alabama State Bar* provides:

> Within sixty (60) days after the announcement of the results, a failing examinee shall be entitled to examine his or her

own papers in the State Bar Headquarters for the purposes of ascertaining that grades were transcribed correctly, and upon payment of $5.00 per section of any essay examination, the examinee will be entitled to receive a copy of the question(s), and of his or her answer(s), and of the model answer(s) and to examine at the State Bar Headquarters the three top papers on the particular examination. Rule VI.I(3) *Rules Governing Admission to the Alabama State Bar* (amendment effective October 1, 1991). Construing the predecessor to this rule, the Eleventh Circuit held "that the rules applicable to the Alabama bar examination, limiting to five the number of times an applicant can sit for the bar examination and granting a limited right to review one's own examination paper, afford applicants adequate due process protections against the possibility that their interests in practicing law will be limited or denied improperly." *Jones v. Board of Comm'rs of the Alabama State Bar,* 737 F.2d 996, 1003 (11th Cir.1984); *cf., Tyler v. Vickery,* 517 F.2d 1089 (5th Cir.1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); *see Ex Parte Puckett,* 603 So.2d 908 (Ala.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993). Stated another way, the *Rules Governing Admission to the Alabama State Bar* afford McFarland a full measure of due process.

Of course, if McFarland had taken the Bar exam the permitted five times, he would not be entitled to relief in federal court on his due process claims. McFarland could always petition the Alabama Supreme Court for leave to take the examination in excess of the rule, as have other applicants in the past. *See e.g. Jones v. Board of Comm'rs of Ala. State Bar,* 353 So.2d 508, 510 (Ala.1977). But McFarland's refusal to avail himself of the process accorded under state law, because he "feels further attempts are futile," does not entitle him to claim the Alabama Supreme Court and State Bar have denied him due process. *Cf. Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); *Lindsey v. Storey,* 936 F.2d 554, 561 (11th Cir.1991).

Moreover, even if McFarland had standing and the issue was not now moot, the Circuit Court for the Eleventh Circuit has clearly ruled that "limiting to five the number of times an applicant can sit for the bar examination and granting a limited right to review one's own examination paper, affords applicants adequate due process protections against the possibility that their interests in practicing law will be limited or denied improperly." *Jones v. Board of Comm'rs of the Ala. State Bar,* 737 F.2d 996, 1003 (11th Cir.1984).

Therefore, regardless of whether this court finds that the plaintiff does not have standing, whether the issue is moot after the rule change by the Supreme Court of Alabama, or whether the plaintiff's claims fail to state a substantive claim upon which relief may be granted, the plaintiff's due process challenge of Rule IV regarding the number of times the applicant may take the bar is due to be dismissed.

▮▮▮▮▮ At this point it should be clear that the admissions process is, itself, *judicial* in function, not merely because it involves the Alabama State Bar and Board of Bar Commissioners acting arms of the supreme court, but because it is the essence of the supreme court's inherent and plenary authority to decide who may be permitted to practice before its courts. McFarland's demand for individual relief in this court, and in particular, his demand that the court order his admission to the Alabama State Bar is specifically prohibited by the *Rooker–Feldman* doctrine. Federal district courts are courts of original, not appellate jurisdiction, and the court would have no jurisdiction to entertain McFarland's demand for federal review of the Supreme Court of Alabama's *judicial* determination of whether or not to admit him to the Alabama State Bar. *See District of Columbia Ct. of Apps. v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

Under the *Rooker–Feldman* doctrine, federal district courts may not review final decisions of a state court..... Comment-

ing on the purpose of the *Rooker–Feldman* doctrine this court has stated that "because federal review of state court decisions is entrusted solely to the Supreme Court, they [federal district courts] may not decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment." *News–Journal Corp. v. Foxman,* 939 F.2d 1499, 1510 n. 13 (11th Cir.1991) (citations omitted) (alteration in original); *cf. Dasher v. Supreme Ct. of Tx.,* 650 F.2d 711 (5th Cir. Unit A July 1981), *vacated on other grounds,* 658 F.2d 1045 (5th Cir.1981). In view of the Supreme Court's ruling in *Feldman,* it is clear that a federal collateral attack seeking an order enjoining the Alabama State Bar to admit an applicant, such as McFarland in this case, is not within the court's jurisdiction. Therefore, McFarland's due process claims are due to be dismissed, with prejudice.

### Rule 11 Sanctions

Defendants have requested sanctions against McFarland pursuant to *Federal Rule of Civil Procedure* 11. The defendants' motion to impose sanctions is due to be denied.

### Conclusion

For the reasons explained above, it **CONSIDERED, ORDERED, and ADJUDGED** that the Motions to Dismiss filed by Alabama Governor Jim Folsom; the Alabama State Legislature; the Alabama Supreme Court, Attorney General Jimmy Evans; Speaker of the House of Representatives of the Alabama Legislature Jimmy Clark; Clerk of the Alabama House of Representatives Gregg Pappas; President Pro–Tem of the Alabama Senate Ryan deGraffenried Jr.; Secretary of the Senate McDowell Lee; and Secretary of State Jim Bennett; Alabama Supreme Court Chief Justice Sonny Hornsby; Associate Justices Hugh Maddox; Reneau P. Almon; Janie L. Shores; J. Gorman Houston; Henry B. Steagall II; Mark Kennedy; Kenneth F. Ingram; Oscar W. Adams Jr.; and Ralph Cook be and the same are hereby **GRANTED.**

It is further **CONSIDERED, ORDERED and ADJUDGED** that the Motion to Dismiss filed by the Alabama State Bar, and its past and present presidents Clarence Small Jr.

and James R. Seale; the Executive Director of the Alabama State Bar, Reginald T. Hamner; the past and present Admissions Secretaries of the Alabama State Bar, Norma Jean Robbins and Dorothy Johnson; and the president of the Alabama State Board of Bar Examiners, Michael Waters, be and the same is hereby **GRANTED.**

It is further **CONSIDERED, ORDERED, and ADJUDGED** that Plaintiff's motions for temporary, preliminary, and permanent injunctive relief, filed November 10, 1993, and plaintiff's motion to add parties, filed November 12, 1993, be and the same are hereby **DENIED.**

It is further **CONSIDERED, ORDERED, and ADJUDGED** that the defendants' motion for Rule 11 sanctions be and the same is hereby **DENIED.**

It is **CONSIDERED, ORDERED, and ADJUDGED** that this action be and the same is hereby **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

It further **CONSIDERED, ORDERED, and ADJUDGED** that all costs herein incurred be and the same are hereby taxed against the plaintiff, for which let execution issue.